## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LOUIS KWAME FOSU<br>**Plaintiff,**<br><br>v.<br><br>STEVEN RICHARD, individually and in his capacity as<br>Partner at Nixon Peabody LLP,<br><br>NIXON PEABODY LLP,<br><br>ANDREW I. GLINCHER (Senior Chairman) Nixon Peabody LLP,<br>STEPHEN D. ZUBIAGO (CEO) Nixon Peabody LLP,<br>WILLIAM CONNOLLY (General Counsel) Nixon Peabody LLP,<br>STACIE COLLIER (Chief Talent Officer) Nixon Peabody LLP,<br>TABITHA ROSS (Chief HR Officer) Nixon Peabody LLP.<br><br>**Defendants**. | Civil Action Number:<br><br>**<u>JURY TRIAL DEMANDED</u>**<br><br>COMPLAINT FOR<br>MONEY DAMAGES ($48,000,000) |

## INTRODUCTION

Yes, granted. Every university has the right to terminate employees—but not

through a cruel, egregious and scorching conspiracy of fraud designed to defame and

destroy a subject-matter expert advocating for fundamental constitutional rights,

an employee with a pristine soul who lives an impeccable, meaningful life anchored

1

in love and truth. This case against Nixon Peabody is an indictment of a corrupt judicial apparatus in the blue state of Rhode Island—a practice of law normalized by fraud and shielded by the hegemon of Rhode Island's judiciary, Chief Judge McConnell, and his partners in crime: former Rhode Island Attorney General, Senator Sheldon Whitehouse and Attorney General Peter Neronha—both men have covered up crime after crime after crime for friends and family of powerful Democratic Party officials. There are dozens of cases with sworn testimony and affidavits that Professor Fosu and his team of advocates have documented, but this case, together with two cases of other exceptional employees who were likewise targeted and lynched for demanding meritocracy and rejecting corrupt DEI and fraudulent employment practices, will show the public just how far New England universities will go to break the best and brightest who stand up to their employment fraud.

(1) See *Daneshwar Persaud v. University of Rhode Island, Alyssa Boss, et al.*, Case No. 1:25-cv-00307-MSM-PAS: https://diversitythinktank.org/wp-content/uploads/2025/08/Dan-Persaud-v-University-of-Rhode-Island-1-25-cv-00307-MSM-PAS-2025.pdf (last visited Dec. 30, 2025); see also: https://diversitythinktank.org/wp-content/uploads/2025/10/091525-DAN-PERSAUD-MTD.pdf (last visited Dec. 30, 2025).

(2) See *Jean Nsabumuremyi v. Michelle Fontes, University of Rhode Island, et al.*, Case No. 25-cv-535: https://diversitythinktank.org/wp-

content/uploads/2025/12/Jean-Nsabumuremyi-v.-Michelle-Fontes-University-of-Rhode-Island-et-al.-10-15-2025.pdf (last visited Dec. 30, 2025).

This is the kind of stitch-up executed by corrupt Democrats that ought to stir all ordinary people to direct action in this blue state—yet there is absolute silence from Black academics and intellectuals across our universities. They are either beholden to the unconstitutional and anti-meritocratic DEI dictates of the Democratic Party, or too afraid that this cruel lynching, aided and abetted by Nixon Peabody and other URI solicitors, will also befall them and their families.

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Louis Kwame Fosu ("Plaintiff" or "Professor Fosu"), proceeding pro se, brings this civil action against Defendants Steven Richard ("Richard") and Nixon Peabody LLP ("Nixon Peabody") (collectively, "Defendants") for their egregious violations of federal law, professional ethics, and the fundamental integrity of the judicial process.

## PARTIES

1. Plaintiff Louis Kwame Fosu is an individual residing in Rhode Island. Plaintiff is a Professor of Practice at the University of Rhode Island ("URI") and Education Director of the Diversity Think Tank ("DTT"), who was wrongfully terminated without due process after protected whistleblowing to expose corrupt DEI practices embedded in fraudulent employment practices at URI that were unconstitutional, anti-meritocratic, viewpoint-discriminatory, retaliatory, and pretextual, and that contributed to a hostile work environment and race discrimination at URI— targeting highly qualified Black and Brown employees who sought merit-based advancement and spoke out against those corrupt employment policies.

Plaintiff, Louis Kwame Fosu was hired at URI in December 2018, first as a Visiting Professor and then as a Professor of Practice in the Political Science Department, see: https://diversitythinktank.org/wp-content/uploads/2021/04/1-Louis-Fosu-%E2%80%93-Department-of-Political-Science.pdf (last visited Dec. 30, 2025). Prof. Fosu designed, developed, and taught the following courses as part of his faculty responsibilities at the University of Rhode Island: (1) Leadership for Social Change (HDF 414), (2) Human Rights, Social Justice Advocacy & Civic Engagement for a More Equitable Society (HPR 224G); (3) U.S. Constitution, and the Supreme Court (PSC 371); (4) Nonprofit Management, Administration and Ethics (PSC 582); (5) American Government Examining Institutional Power,

4

Checks & Balances (PSC 312); (6) United Nations Sustainable Development Goal 4 (GCH-l0l Honors Program); and (7) Establishing Structural Diversity in Institutions: Civil Rights Policy in Practice (HPR 401). As Education Director of the Diversity Think Tank, Fosu continues to teach and hold free workshops on the U.S. Constitution and civil rights policy for the public, students, and employees at URI who need help bringing the law closer to justice.

In addition, Prof. Fosu courageously and consistently advocated for the University of Rhode Island to adopt employment policies grounded in civil and constitutional rights and to hire competent human resources administrators with at least a basic understanding of those rights as related to employment — even if they were not constitutional subject-matter experts. In 2021, after Professor Fosu's persistent advocacy with student leaders and several faculty members, using the Diversity Think Tank as a vehicle to push change, URI finally adopted a nondiscriminatory policy, see: https://diversitythinktank.org/wp-content/uploads/2024/10/URI-Procedures-for-Policy-on-NonDiscrimination.pdf (last visited Dec. 30, 2025). Baruch Hashem. This change came only after Professor Fosu directly challenged the University's President Dooley and Provost DeHayes, demonstrating that their existing HR cum DEI policies were not only abusive toward employees who demanded civil and constitutional rights, but also that URI's leadership was grossly incompetent and retaliatory, routinely making decisions that violated those rights. The *handpicked* DEI leadership in particular at URI has been

especially abusive toward competent and experienced high minded Black employees like Professor Fosu who refuse to "play along" with the pervasive incompetence demonstrated by the all-white senior leadership at URI.

2. Defendant Steven Richard is an individual residing in Rhode Island and a partner at Nixon Peabody LLP. Steven Richard acted both individually and within the scope of his employment as lead counsel representing URI in federal litigation against Plaintiff. Steven Richard serves perennially as URI's outside counsel and for other New England universities, including in cases involving efforts to silence protected speech and suppress academic freedom in employment matters. Richard's deep ties and extensive connections in the judiciary—to Chief Judge McConnell and the Rhode Island bar—make Steven Richard untouchable, even when bar complaints are repeatedly filed against him for misconduct. This makes Richard— and Nixon Peabody—a preferred choice for educational institutions seeking predetermined and predictable litigation outcomes in their favor.

Plaintiff, Prof. Louis Kwame Fosu, is not one to proliferate lurid legal discussions to Rhode Island's oligarchs and gentry without adequate notice. Therefore, Plaintiff, always striving to be courteous, detailed, and informative about his thoughts and analysis of corruption in Rhode Island's judiciary, provided Nixon Peabody—via Steven Richard (along with the national Democratic Party oligarchs)—ample notice on May 15, 2024, of this and other impending lawsuits.

Steven Richard's client, URI; other material participants; and all those who aided and abetted this fraudulent conspiracy to silence Plaintiff's protected speech in a public university were notified. See: https://diversitythinktank.org/wp-content/uploads/2025/12/05-15-2024-Notice-to-Steven-Richard-Regarding-Intent-to-File-a-Lawsuit-Against-Nixon-Peabody-and-Conspirators-p.-5.pdf (last visited Dec. 30, 2025).

3. Defendant Nixon Peabody LLP—is a white-shoe law firm organized under the laws of New York with national and international practice. Nixon Peabody has offices in Rhode Island, New York, Washington, D.C., and elsewhere, with approximately 650 lawyers across 15 offices in the United States and abroad. It conducts substantial business in **the District of Rhode Island**. Nixon Peabody is vicariously liable—under principles of **respondeat superior** and partnership liability—for the tortious acts of its partners and employees committed within the scope of their employment. The firm's principals, named in this lawsuit: Andrew Glincher (Senior Chairman), Stephen Zubiago (CEO), William Connolly (General Counsel), Stacie Collier (Chief Talent Officer) and Tabitha Ross (Chief HR Officer), were repeatedly warned in writing of Steven Richard's outrageous fraud and egregious misrepresentations of fact and law to the court, yet failed to act. Instead, they ratified or acquiesced to Richard's misconduct, while Plaintiff—an experienced and well-qualified rights advocate—was targeted with extreme malice, racial

animus, and a disregard for truth, including the use of fabricated, bespoke complaints and statements calculated and fabricated to destroy his reputation.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3)–(4) (civil-rights jurisdiction), and Plaintiff brings a private civil RICO claim under 18 U.S.C. § 1964(c). The Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district, and all defendants reside in or conduct business in this district.

## STATEMENT OF FACTS

### A. Background and Prior Litigation

6. Plaintiff was employed as a Professor of Practice at URI until his wrongful termination in 2021.

7. Throughout his employment, Plaintiff observed and reported systemic racial discrimination, fraudulent DEI practices and embedded policies that were unconstitutional and anti-meritocratic, an extremely hostile work environment, and abusive employment practices that targeted minority faculty—particularly those who were erudite and outspoken about mediocrity and the hiring of unqualified administrators who, in turn, suppressed protected speech and viewpoints.

8. After Professor Fosu engaged in protected whistleblowing, URI initiated pretextual discipline culminating in termination without due process. No formal complaint existed at the outset. Instead, administrators, counsel, and students— coordinated by DEI leadership and the Vice President for Student Affairs—acted in concert to silence Plaintiff, a Black professor who challenged the University's DEI program and the appointment of unqualified administrators lacking subject-matter expertise in constitutional law and civil rights, and challenged viewpoint discrimination that was compounded by race-based hostility.

9. On June 23, 2021, Plaintiff filed a civil rights lawsuit against URI and various officials (Case No. 1:21-cv-00279-JJM) alleging violations of his constitutional rights.

10. Plaintiff's complaint survived URI's initial motion to dismiss, with the Court finding Plaintiff had stated cognizable claims: https://diversitythinktank.org/wp-

content/uploads/2022/03/Chief-Judge-McConnell-Civil-Rights-Ruling-Counts-III-V-and-VII-March-14-2022.pdf (last visited Dec. 30, 2025).

## B. Steven Richard's Pattern of Fraudulent Conduct

11. Upon entering his appearance as counsel for URI, Defendant Richard immediately embarked on a systematic campaign of fraud, deception, and obstruction of justice designed to corrupt the judicial process and deprive Plaintiff of his constitutional rights.

12. Richard's fraudulent scheme included, but was not limited to:

  (a) Knowingly filing fabricated and perjured documents with the Court.

  (b) Deliberately misrepresenting material facts in pleadings and oral arguments.

  (c) Systematically misstating FERPA law to mislead the Court.

  (d) Conspiring with URI officials to present false testimony.

  (e) Colluding with Chief Judge John J. McConnell to demonize and dehumanize Professor Fosu, prejudice the tribunal, and engineer a pretextual dismissal under the guise of legitimacy.

    Plaintiff took immediate action. Yet at each step, the institutions that should function as checks against corruption—including the First Circuit, the U.S. Department of Justice, and the FBI—failed to act, even as a legitimate

lawsuit exposed egregious employment fraud and the suppression of protected speech at a public university. The following are a handful of representative actions Plaintiff took to halt and remedy fraud upon the court:

**(i)**    First **bar complaint** against **Steven Richard**; all **Nixon Peabody** principals **were notified**, including a **"Fraud Upon the Court"** letter, see: https://diversitythinktank.org/wp-content/uploads/2024/03/Plaintiff-ECF-56-Notifying-Court-of-Bar-Complaint.pdf (last visited Dec. 30, 2025).

**(ii)**    Second **bar complaint** against **Steven Richard**; all **Nixon Peabody** principals **were notified,** see: https://diversitythinktank.org/wp-content/uploads/2024/04/03282024-Refiled-Bar-Complaint-Against-Steven-Richard-Nixon-Peabody-Law-Partner.pdf (last visited Dec. 30, 2025).

**(iii)**    Complaint to **First Circuit** against **Chief Judge John McConnell, see**: https://diversitythinktank.org/wp-content/uploads/2024/04/03142024-Complaint-Judicial-Misconduct-Against-John-McConnell.pdf (last visited Dec. 30, 2025).

**(iv)**    Motion to Withdraw as Pro Se Litigant, see: https://diversitythinktank.org/wp-content/uploads/2025/10/Louis-Kwame-Fosu-MOTION-TO-WITHDRAW-AS-PRO-SE-LITIGANT-Sept-10-2025-1.pdf (last visited Dec. 30, 2025).

**(v)**    Motion for Recusal and Disqualification of Chief Judge John J. McConnell, see: https://diversitythinktank.org/wp-content/uploads/2025/10/Motion-for-Recusal-and-Disqualification-of-Chief-Judge-John-J.-McConnell-1072025.pdf (last visited Dec. 30, 2025).

**(vi)**    Sworn Affidavit filed in support of **recusal of Chief Judge John McConnell**, see: https://diversitythinktank.org/wp-content/uploads/2025/10/Filed-SWORN-AFFIDAVIT-OF-LOUIS-KWAME-FOSU-100725.pdf (last visited Dec. 30, 2025).

**(vii)**    Motion for Change of Venue, see: https://diversitythinktank.org/wp-content/uploads/2025/10/filed-Motion-for-Change-of-Venue-10102025.pdf (last visited Dec. 30, 2025).

**(viii)**    First recusal, **Chief Judge John McConnell, see**:

https://diversitythinktank.org/wp-content/uploads/2025/10/first-recusal-John-McConnell.pdf (last visited Dec. 30, 2025).

**(ix)**    Second recusal, **Judge Mary McElroy, see**:

https://diversitythinktank.org/wp-content/uploads/2025/10/Second-recusal-Mary-McElroy.pdf (last visited Dec. 30, 2025).

**(x)**    Third recusal, **Judge Melissa DuBose,** see:

https://diversitythinktank.org/wp-content/uploads/2025/10/Third-recusal-Melissa-DuBose.pdf (last visited Dec. 30, 2025).

**(xi)**   Fourth recusal, **Judge Patricia Sullivan**, see:

https://diversitythinktank.org/wp-content/uploads/2025/10/fourth-recusal-Patricia-Sullivan.pdf (last visited Dec. 30, 2025).

**(xii)**   Fifth recusal, **Judge Amy Moses**, see:

https://diversitythinktank.org/wp-content/uploads/2025/10/fifth-recusal-Amy-Moses.pdf (last visited Dec. 30, 2025).

## C. Specific Instances of Fraud and Misrepresentation

13. First Instance—Fabrication of Multiple Documents. Nixon Peabody's Steven Richard knowingly submitted multiple fabricated and misleading documents to the court, including filings that falsely framed and portrayed Plaintiff's communications and conduct with colleagues as violations of university policy, despite possessing evidence to the contrary. Steven Richard knew no disciplinary or misconduct complaint existed against Professor Fosu. Yet Richard's federal filings contained extensive material misrepresentations and omissions, designed to brand Professor Fosu—a high-minded scholar with a pristine record and longstanding support from women's-rights activists—as a misogynist, and to mislead the court and the public. Steven Richard knows that Professor Fosu has spent his entire career advocating for policy changes benefiting women. This malicious and gross misconduct by Nixon Peabody reflects a corrupt pattern and practice coordinated by URI counsel and administrators with outside counsel Steven Richard.

13

14. Second Instance—Concealment of Exculpatory Evidence. During discovery, Nixon Peabody obtained Plaintiff's collegial texts with his Department Chair, Marc Hutchison, dated December 28, 2020, which demonstrated that Plaintiff's communications were appropriate and professional. Richard also concealed that Professor Fosu was sought after by the Women's Department to develop a class, and that several other department heads and directors, including the URI Honors Program, wanted Professor Fosu to develop courses for their students. Richard deliberately concealed this evidence from the Court, in violation of Federal Rules of Civil Procedure 26 and 37, and ethical duties of disclosure owed to the Court and opposing counsel.

15. Third Instance - FERPA Misrepresentations: With Chief Judge John McConnell's knowledge and support, Nixon Peabody partner Steven Richard repeatedly, "misled the court about FERPA law" by falsely claiming Plaintiff was bound by FERPA restrictions when authoritative sources confirm FERPA does not apply to individual professors exposing misconduct and fraud in universities, see: https://studentprivacy.ed.gov/faq/which-educational-agencies-or-institutions-does-ferpa-apply (last visited Dec. 30, 2025). Richard deliberately misstated FERPA to chill Professor Fosu's protected speech and advocacy exposing corrupt practices at URI, and deliberately misled the Court about FERPA and Plaintiff's rights. Invoking FERPA to silence protected speech has been a pattern and practice of

Steven Richard and URI solicitors—until Professor Fosu challenged it in federal
court. On Dec. 15, 2023, Richard falsely accused Plaintiff of a FERPA violation; two
days later, Plaintiff moved (ECF 47, Dec. 17, 2023) to compel withdrawal,
explaining that neither Plaintiff nor Diversity Think Tank ("DTT") are FERPA-
covered educational institutions and that FERPA cannot be invoked to conceal
wrongdoing by the University of Rhode Island.

16. Fourth Instance—Multiple False Accusations in Court filings. For example,
Richard deceptively implied that Plaintiff was a "vexatious" litigant who violated
the March 8, 2024 litigation moratorium. The docket shows it was Richard, not
Plaintiff, who filed during the moratorium—submitting ECF 62 (Defendants'
Motion for Leave to File a Motion Seeking Sanctions for Plaintiff's Vexatious
Litigation Misconduct)—to prolong reputational harm and prejudice the tribunal.
*(Compare* ECF 62 *with* ECF 63 (Notice of Intent to File a Petition for Writ of
Mandamus to DOJ), documenting Plaintiff's position to halt another concerted
attempt by Steven Richard to have his friend Chief Judge John McConnell dismiss
the case. The accusation by Richard was knowingly false and calculated to mislead
the Court and taint the proceedings, in violation of Fed. R. Civ. P. 11(b)(3)–(4)
(factual contentions must have evidentiary support; denials must be warranted),
Rule 3.3(a)(1) (candor to the tribunal), Rule 4.1(a) (truthfulness in statements to
others), and Rule 8.4(c), (d) (dishonesty; conduct prejudicial to the administration of
justice).

17. Fifth Instance—Racist Dog Whistles. Richard's filings deployed racially coded "dog-whistle" rhetoric—inviting the inference that a Black man, with a pristine soul, …who speaks hard truths is "vexatious," thereby perpetuating malicious stereotypes that dehumanize Black men in Rhode Island and other blue states as angry and dangerous—even though the solicitors attacking Professor Fosu's character are ill-mannered and less educated than he is. Such conduct by Nixon Peabody mercenary, Steven Richard, violates the duties of candor and fairness and contravenes professional-conduct rules (including Rule 8.4) that prohibit discrimination and conduct prejudicial to the administration of justice. Our federal courts are not gated enclaves for the loudest or the best-connected white men and women. Our federal courts are the people's tribunals—including erudite Black men who refuse to be silenced and who fundamentally challenge the folly and unconstitutionality of DEI policies—and the doors of federal courts cannot be narrowed by coded racist attacks or high-priced *Nixon Peabody* litigation tactics.

## D. Collusion with Chief Judge John McConnell

18. Steven Richard and Chief Judge John McConnell maintained a "close friendship" spanning "over a decade" from their time as colleagues at Roger Williams Law School, and other institutionalized relationships in Rhode Island.

19. Richard systematically exploited his close friendship with Federal Court Judge John McConnell to obtain favorable rulings unsupported by law or fact. Chief Judge John J. McConnell's handling of related matters reflects a history of bias and favoritism. For example, in the Persaud litigation, McConnell's court adopted unfounded accusations of bribery and a check-cashing scheme—claims later shown to be pretextual—advanced by lawyers with ties to Judge McConnell, his Democratic Party associates, and the local bar, yielding a predetermined outcome. Plaintiff detailed this fraud in federal court against the Persaud family in complaints to the First Circuit and the DOJ, and in Prof. Fosu's Sworn Affidavit filed in support of recusal of Chief Judge John McConnell, see:

https://diversitythinktank.org/wp-content/uploads/2025/10/Filed-SWORN-AFFIDAVIT-OF-LOUIS-KWAME-FOSU-100725.pdf (last visited Dec. 30, 2025).


20. Judge McConnell reciprocated by:

   (a) Issuing biased rulings (ECF 58) designed to "cover up Steven Richard's unprofessional, unethical, and improper misleading conduct"

   (b) Falsely stating Richard's conduct was "nothing but professional, ethical, and proper"

   (c) Unlawfully sealing and suppressing ALL Plaintiff's evidence exposing Richard's extensive fraud upon the court.

   (d) Denying Plaintiff's motions without proper consideration

21. This collusion violated due process requirements for a fair and impartial tribunal. See Tumey v. Ohio, 273 U.S. 510 (1927) (judge must recuse when having pecuniary interest); In re Murchison, 349 U.S. 133, 136 (1955) ('no man can be a judge in his own cause'); 28 U.S.C. § 455.

## E. Violation of Professional Ethics

22. The Rhode Island Supreme Court Disciplinary Board received a detailed 49-page complaint documenting Richard's violations of Rules 4.1 and 8.4 of the Rhode Island Disciplinary Rules of Professional Conduct.

23. Pages 38-49 of the Bar Complaint set out clear evidence of Steven Richard's repeated Rule 4.1 violations, including specific instances of knowingly false statements. Despite the seriousness of these allegations, no disciplinary action followed. Plaintiff unequivocally states that the corrupting influence wielded by Nixon Peabody partners—including Steven Richard—contributed to the inaction by Kerry Reilley Travers, Chief Disciplinary Counsel and her team. The RI Bar will also be sued for covering up this extensive fraud.

24. Richard's conduct constitutes "misleading conduct" as defined in 18 U.S.C. § 1515(a)(3) and falls within the prohibitions of 18 U.S.C. § 1512(b) (knowingly using intimidation, threats, or corrupt persuasion to influence testimony) and/or § 1512(d)

(harassment to hinder, delay, or prevent communication to law enforcement), and is pled here as predicate conduct and as part of the overall pattern of obstruction.

**F. Damages to Plaintiff**

25. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered:

   (a) Loss of employment and tenure

   (b) Loss of earnings and benefits

   (c) Damage to professional reputation

   (e) Severe emotional distress

   (f) Deprivation of constitutional rights

   (g) Costs and expenses of litigation that are currently at a million dollars and rising, see: https://diversitythinktank.org/wp-content/uploads/2025/10/Cost-of-Litigation-for-Free-Speech-in-a-University.pdf (last visited Dec. 30, 2025).

## CAUSES OF ACTION

### COUNT I: FRAUD UPON THE COURT

26. Plaintiff realleges and incorporates paragraphs 1-25 as if fully set forth herein.

27. "Fraud on the court" occurs when a party "sets in motion an unconscionable plan or scheme designed to improperly influence the court in its decision." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944).

28. In the First Circuit, it exists where a litigant "sentiently set in motion some unconscionable scheme" to interfere with the judiciary's ability to impartially adjudicate. *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989). The doctrine is reserved for egregious misconduct proven by clear and convincing evidence that undermines the integrity of the process, as is the case with Steven Richard in Chief Judge McConnell's court.

29. Defendants perpetrated fraud on the court by:

(a) Knowingly presenting fabricated evidence

(b) Deliberately concealing material exculpatory evidence

(c) Making false representations of law and fact

(d) Corrupting the tribunal through collusion with Judge McConnell

30. This fraud executed by Nixon Peabody in federal court was "directed to the judicial machinery itself" (see, e.g., *Kenner v. C.I.R.*, 387 F.2d 689, 691 (7th Cir. 1968)) and "involve[d] far more than an injury to a single litigant." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

31. As a result, Plaintiff is entitled to recover damages.

## COUNT II: DELIBERATE MISREPRESENTATION OF FACT

32. Plaintiff realleges paragraphs 1-31.

33. Under Rhode Island law, fraudulent misrepresentation requires: (1) a false representation of material fact; (2) knowledge of the statement's falsity; (3) intent to induce reliance by the plaintiff; (4) justifiable reliance by the plaintiff; and (5) resulting damage. Women's Dev. Corp. v. City of Central Falls, 764 A.2d 151, 160 (R.I. 2001).

34. Richard made numerous false representations of material fact, including but not limited to:

  (a) Falsely claiming Plaintiff violated FERPA

  (b) Falsely stating Plaintiff violated the March 8, 2024 moratorium

  (c) Fabricating allegations of unprofessional conduct

  (d) Mischaracterizing Plaintiff's protected speech as "vexatious"

35. Richard knew these representations were false based on discovery materials in his possession.

36. Richard intended the Court to rely on these misrepresentations to dismiss Plaintiff's meritorious claims.

37. The Court did rely on these misrepresentations, resulting in adverse rulings against Plaintiff.

38. As a direct and proximate result of Defendants' misconduct, Plaintiff who speaks truthfully about the corrupt Democratic Party machinery in Rhode Island that shields universities from prosecution, suffered: (a) litigation prejudice, including the sealing and suppression of ALL of his motions and evidence; (b) dismissal/impairment of claims and defenses; (c) reputational harm and public humiliation arising from false and misleading filings; (d) economic losses, including lost wages, lost professional opportunities, and litigation expenses; (e) emotional distress and dignitary harms; and (f) ongoing impairment of legal interests and constitutional injuries (retaliation, due-process and equal-protection violations). Plaintiff seeks compensatory and punitive damages, equitable relief (including expungement, reinstatement or front pay, and injunctions against further retaliation), costs, and attorneys' fees (the cost of litigation to fight fraudulent

solicitors and defend free speech and academic freedom in the blue state Rhode Island, see: https://diversitythinktank.org/wp-content/uploads/2025/10/Cost-of-Litigation-for-Free-Speech-in-a-University.pdf (last visited Dec. 30, 2025).

## COUNT III: DELIBERATE MISREPRESENTATION OF LAW

39. Plaintiff realleges paragraphs 1-38.

40. Solicitors owe an absolute duty of candor to the tribunal: they may not knowingly misstate the law and must disclose directly adverse controlling authority. See Model Rule 3.3(a)(1)–(2); Precision Specialty Metals, Inc. v. United States, 315 F.3d 1346, 1355–57 (Fed. Cir. 2003) (reprimand affirmed for misquoting/omitting limiting language; emphasizing lawyers' "fundamental duty to be candid and scrupulously accurate").

41. Rule 11 of the Federal Rules of Civil Procedure requires that legal contentions be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." Fed. R. Civ. P. 11(b)(2).

42. Richard systematically misrepresented FERPA law by:

   (a) Falsely claiming FERPA prohibited Plaintiff's disclosures

(b) Mischaracterizing and misstating FERPA to muzzle individual professors who opposed unconstitutional, anti-meritocratic, and systemically discriminatory DEI and fraudulent employment policies—targeting high-minded Black scholars.

(c) Invoking sham "FERPA" claims to block evidence of URI's conspiracy to commit fraud and to suborn perjury.

43. Authoritative sources confirm that FERPA applies to educational agencies and institutions receiving federal education funds, not to individual professors acting in an advocacy capacity to truthfully protect harmed employees, see: https://studentprivacy.ed.gov/faq/which-educational-agencies-or-institutions-does-ferpa-apply (last visited Dec. 30, 2025). See 20 U.S.C. § 1232g; 34 C.F.R. pt. 99. FERPA provides no private right of action (it is enforced administratively through potential loss of funds), and protects student "education records," not general advocacy materials. See Gonzaga Univ. v. Doe, 536 U.S. 273 (2002); Owasso Indep. Sch. Dist. v. Falvo, 534 U.S. 426 (2002). URI administrators and DEI personnel incentivized students to lodge false complaints and then improperly invoked FERPA to suppress disclosure of materials that would expose those schemes, as detailed in ECF 47, see: https://diversitythinktank.org/wp-content/uploads/2024/03/Plaintiff-motion-ECF-47.pdf (last visited Dec. 30, 2025).

44. Steven Richard's misrepresentations violated Fed. R. Civ. P. 11(b)(2)–(3) and warrant sanctions under Rule 11(c). See *Business Guides, Inc. v. Chromatic*

*Commc'ns Enters.*, 498 U.S. 533, 546–57 (1991) (objective reasonableness; sanctions may be imposed on represented parties as well as counsel); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393–98 (1990) (Rule 11 standard and sanctions); First Circuit: *Lancellotti v. Fay*, 909 F.2d 15, 19–20 (1st Cir. 1990) (objective standard; adequate factual findings required to support Rule 11 sanctions).

## COUNT IV: (FRAUD) CONSPIRACY WITH JUDGE MCCONNELL TO DISMISS CASE

45. Plaintiff realleges paragraphs 1-44.

46. The Due Process Clause guarantees "a **fair trial in a fair tribunal**," presided over by a judge with **no actual bias or interest** in the outcome. *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (citing *In re Murchison*, 349 U.S. 133, 136 (1955); *Tumey v. Ohio*, 273 U.S. 510 (1927)).

47. A judge must recuse when "his impartiality might reasonably be questioned." 28 U.S.C. § 455(a); Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 859-60 (1988).

48. Richard and Judge McConnell conspired to deprive Plaintiff of due process by:

  (a) Leveraging their decade-long friendship in Rhode Island.

25

(b) Coordinating biased rulings to conceal Richard's fraud.

(c) Having Judge McConnell falsely vouch for Richard's conduct, even though any astute judge would know when law is misstated and facts misrepresented.

(d) Arranging to seal evidence exposing the conspiracy.

49. This conspiracy violated Plaintiff's Fourteenth Amendment rights to due process.

50. A judge must be disqualified whenever "his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Where a violation of § 455(a) undermines public confidence in the judiciary, vacatur may be warranted. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859–60 (1988). *(See also Liteky v. United States*, 510 U.S. 540, 555–56 (1994) (bias standard, extrajudicial-source doctrine).

## COUNT V: (FRAUD) CONSPIRACY TO SUBORN PERJURY

51. Plaintiff realleges paragraphs 1-50.

52. Subornation of Perjury (18 U.S.C. § 1622) — Predicate/Factual Allegations. Defendants' conduct constitutes subornation of perjury—i.e., procuring another to commit perjury—as defined by 18 U.S.C. § 1622. While § 1622 is a criminal statute that does not create a private right of action, Professor Fosu pleads this conduct as: (i) predicate racketeering activity supporting the civil RICO counts and (ii) factual

support for the fraud, civil-conspiracy, § 1985, abuse-of-process, and sanction requests under Rule 11 and the Court's inherent authority.

53. Subornation of perjury under 18 U.S.C. § 1622 requires proof that (i) a witness actually committed perjury (under oath, false, material, willful), (ii) Defendant procured or induced that perjury, and (iii) Defendant knew (or had reason to know) the testimony was false and that the witness knew it was false. See DOJ Criminal Resource Manual § 1752; 9th Cir. Model Jury Instr. 24.15/8.136; CRS, Perjury/Subornation Overviews.

54. Defendants conspired to suborn perjury by:

   (a) Coordinating with URI officials to present false testimony

   (b) Knowingly filing declarations containing false statements

   (c) Presenting fabricated evidence to support false claims

55. The false testimony was material to the Court's proceedings and rulings; it precipitated the sealing and suppression of Plaintiff's motions and evidence and prolonged the litigation for years, in a calculated effort to exhaust Professor Fosu and coerce a de minimis (nuisance-value) settlement.

56. Defendants acted with corrupt intent to obstruct justice or pervert the course of justice.

<u>COUNT VI: CIVIL CONSPIRACY TO COMMIT FRAUD</u>

57. Plaintiff realleges paragraphs 1-56.


58. Civil conspiracy requires: (1) two or more persons; (2) an agreement; (3) to accomplish an unlawful objective or lawful objective by unlawful means; (4) an overt act; (5) damages. Guilbeault v. R.J. Reynolds Tobacco Co., 84 F. Supp. 2d 263, 268 (D.R.I. 2000).


59. Defendants conspired with URI officials and Judge McConnell to defraud the Court.


60. The conspiracy's unlawful objectives included:

  (a) Dismissing Plaintiff's meritorious claims through fraud

  (b) Concealing evidence of URI's discrimination

  (c) Retaliating against Plaintiff's protected speech


61. Overt acts included filing false documents and making egregious misrepresentations.


62. Plaintiff has suffered continuously accruing damages as a direct result.

## COUNT VII: WIRE FRAUD (18 U.S.C. § 1343)

63. Plaintiff realleges paragraphs 1-62.


64. Wire fraud requires (i) a scheme to defraud involving a material misrepresentation or omission, (ii) intent to defraud, and (iii) use of interstate wires in furtherance of the scheme to obtain money or property. See Carpenter v. United States, 484 U.S. 19, 25–28 (1987); Neder v. United States, 527 U.S. 1, 16, 20–25 (1999); Kelly v. United States, 140 S. Ct. 1565, 1571–74 (2020); Ciminelli v. United States, 143 S. Ct. 1121, 1127–29 (2023).


65. Defendants devised a scheme to defraud the Court and Plaintiff by:

    (a) Filing false documents via ECF (electronic filing)

    (b) Transmitting fraudulent legal arguments electronically

    (c) Coordinating the conspiracy through electronic communications


66. The ECF system utilizes interstate wire communications.


67. Defendants acted with specific intent to defraud.


68. Each electronic transmission and use of interstate wires in furtherance of the scheme constitutes a separate violation of 18 U.S.C. § 1343. *See, e.g.,* United States

v. Sawyer, 85 F.3d 713, 740 (1st Cir. 1996); Schmuck v. United States, 489 U.S. 705, 712 (1989) (analogous mail-fraud principle).

## COUNT VIII: (FRAUD) ABUSE OF PROCESS

69. Plaintiff realleges paragraphs 1-68.

70. Abuse of process requires (1) the use of legal process, (2) an ulterior or wrongful motive, and (3) a willful act in the use of the process that is not proper in the regular conduct of the proceeding. *Butera v. Boucher*, 798 A.2d 340, 352 (R.I. 2002).

71. Defendants abused legal process by:

  (a) Filing motions to harass and intimidate Plaintiff

  (b) Misusing FERPA arguments to suppress legitimate evidence

  (c) Weaponizing court procedures to silence whistleblowing

72. Defendants' ulterior motive was to retaliate against protected speech, not to vindicate legitimate interests.

73. The improper use included filing false documents and making misrepresentations.

74. The gravamen of abuse of process is misuse of process after it has issued—a perversion of procedure to achieve an ulterior purpose. See *Butera v. Boucher*, 798 A.2d 340, 353 (R.I. 2002).

## COUNT IX: MALICIOUS PROSECUTION

75. Plaintiff realleges paragraphs 1-74.

76. Malicious prosecution requires: (1) institution of proceedings, (2) termination in plaintiff's favor, (3) absence of probable cause, (4) malice, and (5) damages. *Solitro v. Moffatt*, 523 A.2d 858, 861–62 (R.I. 1987); *Kingstown Mobile Home Park v. Strashnick*, 774 A.2d 847, 858 (R.I. 2001).

77. Plaintiff realleges and incorporates paragraphs 1-76 as if fully set forth herein.

78. To establish malicious prosecution under Rhode Island law, a plaintiff must prove: (1) institution of prior proceedings by the defendant, (2) termination in the plaintiff's favor, (3) absence of probable cause, and (4) malice. *Solitro v. Moffatt*, 523 A.2d 858, 861–62 (R.I. 1987); *Kingstown Mobile Home Park v. Strashnick*, 774 A.2d 847, 858 (R.I. 2001); *Henshaw v. Doherty*, 881 A.2d 909, 916–17 (R.I. 2005).

79. Defendants initiated and maintained proceedings against Plaintiff by:

(a) Filing a fraudulent Orwellian scheme to label Plaintiff's litigation as "vexatious"

(b) Repeatedly moving to dismiss meritorious claims that had already survived judicial scrutiny

(c) Pursuing sanctions and vexatious litigant declarations without factual or legal basis

80. These proceedings lacked probable cause because:

(a) Plaintiff's claims had already survived URI's motion to dismiss

(b) The Court had found Plaintiff stated cognizable constitutional claims

(c) Richard possessed exculpatory evidence (including December 28, 2020 texts with Department Chair Marc Hutchison, and volumes of other data) proving Plaintiff's communications were professional, collegial and appropriate.

81. Defendants acted with malice, as evidenced by:

(a) Knowledge that allegations against Plaintiff were false

(b) Intent to silence a whistleblower reporting racial discrimination

(c) Use of "racist dog whistle" language suggesting "Black men who speak truth should be deemed "scurrilous and vexatious," as stated and implied by Chief Judge McConnell and Steven Richard, respectively.

(d) Exploitation of friendship with Judge McConnell to obtain favorable rulings

82. The proceedings terminated favorably to Plaintiff when his claims survived initial dismissal attempts, establishing their merit.

83. Plaintiff suffered damages including lawyer's fees, lost time defending against frivolous accusations, emotional distress, and reputational harm.

### COUNT X: CIVIL RICO VIOLATIONS (18 U.S.C. § 1964(c))

84. Plaintiff realleges and incorporates paragraphs 1-83 as if fully set forth herein.

85. To establish a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must prove: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, which (5) proximately causes injury to the plaintiff's business or property by reason of the RICO violation. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992) (proximate cause). A "pattern" requires at least two related predicates with continuity (closed- or open-ended). *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239–43 (1989). The RICO "person" must be distinct from the "enterprise." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161–63 (2001).

86. The Enterprise: Defendants Richard and Nixon Peabody, together with other named participants, formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4). An enterprise "includes any individual, partnership,

corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." United States v. Turkette, 452 U.S. 576, 583 (1981). The enterprise possessed the minimal structure required—a common purpose, relationships among participants, and longevity sufficient to pursue that purpose. Boyle v. United States, 556 U.S. 938, 946 (2009).

87. The enterprise existed for the common purpose of:

  (a) Silencing Plaintiff's whistleblowing about racial discrimination and pervasive employment fraud and DEI abuse at URI

  (b) Defeating Plaintiff's lawsuit through fraudulent means

  (c) Protecting URI from liability for constitutional violations

88. Pattern of Racketeering Activity:  A "pattern" requires at least two acts of racketeering activity within ten years. 18 U.S.C. § 1961(5). It also must demonstrate "continuity plus relationship," meaning related predicates that either span a substantial period (closed-ended continuity) or pose a threat of ongoing criminal conduct (open-ended continuity). *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239–43 (1989).

89. Defendants committed numerous predicate acts including:

a.  Mail Fraud (18 U.S.C. § 1341). Each use of the U.S. mails in furtherance of a scheme to defraud can constitute a separate § 1341 violation. Schmuck v. United States, 489 U.S. 705, 712 (1989). This requires a material falsehood or omission and a scheme aimed at obtaining money or property. Neder v. United States, 527 U.S. 1, 16 (1999); Kelly v. United States, 140 S. Ct. 1565, 1571–74 (2020); Ciminelli v. United States, 143 S. Ct. 1121, 1127–29 (2023). Multiple fraudulent pleadings to the court by Steven Richard were mailings that furthered execution of the scheme. Richard mailed:

(i) Fabricated documents falsely portraying Plaintiff's conduct

(ii) Pleadings containing knowing misrepresentations of FERPA law

(iii) Motions based on concealed exculpatory evidence


b.  Wire Fraud (18 U.S.C. § 1343): Each use of interstate wires (including electronic court filings) in furtherance of a scheme to defraud can constitute a separate § 1343 violation, provided the scheme involves a material misrepresentation or omission and aims to obtain money or property. *See, e.g.,* United States v. Sawyer, 85 F.3d 713, 740 (1st Cir. 1996); *Carpenter v. United States*, 484 U.S. 19, 25–28 (1987); *Neder v. United States*, 527 U.S. 1, 16 (1999); *Kelly v. United States*, 140 S. Ct. 1565, 1571–74 (2020); *Ciminelli v. United States*, 143 S. Ct. 1121, 1127–29 (2023).

Richard filed multiple documents electronically:

(i)     false declarations and affidavits;

(ii)    misleading memoranda; and

(iii)   fraudulent motions to dismiss—each material and in furtherance of the
        scheme.

c. Obstruction of Justice (18 U.S.C. § 1503): Knowingly and corruptly endeavoring
to influence, obstruct, or impede the due administration of justice in a pending
federal proceeding, including by:

   (i) Filing fabricated evidence

   (ii) Concealing material exculpatory evidence

   (iii) Colluding with Judge McConnell to "fix" predetermined outcomes

d. Witness Tampering (18 U.S.C. § 1512): Knowingly using intimidation, threats,
or corrupt persuasion, or engaging in misleading conduct, with intent to influence,
delay, or prevent a person's testimony in an official proceeding, or to
hinder/delay/prevent a person's communication to law enforcement, including by:

   (i) Threatening Plaintiff with vexatious litigant status.

   (ii) Using judicial process to silence protected speech.

90. Continuity: The predicate acts show **closed-ended continuity** (multiple related acts over a substantial period) and **open-ended continuity** (a threat of continued racketeering). *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239–43 (1989); *Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 609 (3d Cir. 1991); see also *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 16–21 (1st Cir. 2000) (discussing continuity), *Home Orthopedics Corp. v. Rodríguez*, 781 F.3d 521, 531–33 (1st Cir. 2015).

91. Injury to Business or Property: RICO requires concrete pecuniary loss proximately caused by the violation. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 456–61 (2006); *Holmes v. SIPC*, 503 U.S. 258, 268 (1992). Plaintiff suffered:

  (i)  Prof Fosu's loss of position , salary and consulting fees (lost wages/benefits = business/property injury);

  (ii) Diminished future earning capacity due to reputational harm manifesting in measurable economic loss (e.g., lost offers, reduced compensation);

 (iii) Out-of-pocket litigation expenses proximately caused by Defendants' racketeering acts.

92. Plaintiff is entitled to treble damages under 18 U.S.C. § 1964(c).

## COUNT XI: CONSPIRACY TO VIOLATE AND INTERFERE WITH CIVIL

## RIGHTS (42 U.S.C. § 1985)

93. Plaintiff realleges and incorporates paragraphs 1-92 as if fully set forth herein.

94. Section 1985(2) prohibits conspiracies to obstruct justice or intimidate parties/witnesses.

(a) First clause (federal courts): no class-based animus required.

(b) Second clause (state courts / "equal protection of the laws"): requires class-based, invidiously discriminatory animus. *Kush v. Rutledge*, 460 U.S. 719, 724–26 (1983).

95. § 1985(3) prohibits conspiracies to deprive persons of equal protection or equal privileges and immunities, and requires class-based, invidiously discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 101–02 (1971).

To establish a § 1985(3) claim, Plaintiff must prove:

(i) A conspiracy;

(ii) purpose of depriving a person or class of equal protection (or equal privileges and immunities), motivated by class-based, invidiously discriminatory animus;

(iii) an overt act in furtherance of the conspiracy; and

38

(iv) injury to person or property, or deprivation of a federal right.

*Griffin*, 403 U.S. at 101–03; see also *Aulson v. Blanchard*, 83 F.3d 1, 3–
4 (1st Cir. 1996) (First Circuit requiring identifiable class and
invidious animus).

96. Conspiracy: To establish a civil-rights conspiracy, a plaintiff must show an
agreement (meeting of the minds) between two or more persons to deprive the
plaintiff of constitutional or federal rights, followed by an overt act in furtherance
and resulting injury. *Pérez-Sánchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir.
2008); *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988); see also *Nieves v.
McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001).

The record establishes:

(i) Agreement and coordination among Richard and URI officials to secure
adverse rulings by deploying false and misleading submissions;

(ii) Overt acts, including the filing of materially misleading affidavits and
memoranda, misuse of FERPA to suppress evidence, and discovery
concealment;

(iii) Efforts to corruptly influence the tribunal's decision-making through
these coordinated filings;

(iv) Injury, including litigation prejudice, suppression of Plaintiff's filings and
evidence, and economic/reputational harm.

97. Racial Animus: Section 1985(3) requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971); *Aulson v. Blanchard*, 83 F.3d 1, 3–4 (1st Cir. 1996).

The record demonstrates Steven Richard's:

(i) use of racially coded ("dog-whistle") rhetoric portraying Plaintiff, an African-American, as "vexatious;"

(ii) assertions implying that Black men who speak hard truths should be deemed vexatious;

(iii) a pattern of discriminatory treatment against Plaintiff in a context of longstanding, documented racial abuses—supporting the required class-based, invidiously discriminatory animus.

98. Acts in Furtherance: Overt acts include:

  (i) Filing fabricated documents (ECF entries)

  (ii) Judge McConnell's biased rulings (ECF 58)

  (iii) Sealing evidence to prevent rebuttal

  (iv) Coordinated dismissal efforts

99. Injury: Plaintiff suffered deprivation of:

  (i) First Amendment rights (retaliation for protected speech)

(ii) Fourteenth Amendment due process rights

(iii) Equal protection under law

(iv) Right to seek redress in federal court

100. The First Amendment protects "the right to petition the Government for redress of grievances." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). Conspiracies to obstruct or retaliate against petitioning activity are actionable under 42 U.S.C. § 1985 when the statute's additional requirements are met—under § 1985(2) (first clause) for interference with federal judicial proceedings, and under § 1985(3) when motivated by class-based, invidiously discriminatory animus.

## COUNT XII: OBSTRUCTION OF JUSTICE

101. Plaintiff realleges and incorporates paragraphs 1-100 as if fully set forth herein.

102. While 18 U.S.C. § 1503 is a criminal statute with no private right of action, obstructive conduct can support civil relief through three mechanisms. First, where such conduct constitutes witness tampering or retaliation in violation of 18 U.S.C. §§ 1512-1513, those offenses serve as RICO predicate acts under 18 U.S.C. § 1961(1)(B). Second, evidence of obstructive conduct may be admissible in civil proceedings to establish malice, bad faith, intent, or credibility for related claims, including torts such as abuse of process, subject to applicable evidentiary rules.

41

Third, federal courts possess inherent power to sanction bad-faith conduct that abuses the judicial process, including fraudulent attempts to deprive the court of jurisdiction, filing false pleadings, and employing delay tactics demonstrated by Nixon Peabody. Chambers v. NASCO, Inc., 501 U.S. 32, 44-46, 50 (1991).

103. Under 18 U.S.C. § 1503, obstruction of justice requires proof of three elements: (1) a pending judicial proceeding; (2) the defendant's knowledge of that proceeding; and (3) that the defendant corruptly endeavored to influence, obstruct, or impede the due administration of justice. The third element requires both corrupt intent and a sufficient nexus between the defendant's conduct and the judicial proceeding—the endeavor must have the 'natural and probable effect of interfering with the due administration of justice.' United States v. Aguilar, 515 U.S. 593, 599-600 (1995). The government need not prove that the obstructive endeavor succeeded, only that the defendant undertook it with the requisite corrupt intent. Id. at 599-600.

104. Pending Proceeding: Plaintiff's federal civil rights case (1:21-cv-00279-JJM) was actively pending.

105. Knowledge: Steven Richard entered his appearance as counsel with full knowledge of the proceedings.

106. Corrupt Intent: Under 18 U.S.C. § 1503, 'corruptly' means acting with the intent to wrongfully influence, obstruct, or impede the due administration of justice. This requirement focuses on the ends of the actor's conduct rather than the means; any act—whether lawful or unlawful on its face—may constitute obstruction if performed with a corrupt motive. Corrupt intent can be proven through circumstantial evidence showing the defendant acted to achieve unlawful ends or to protect wrongdoers rather than serve legitimate interests. United States v. Cintolo, 818 F.2d 980, 990-92 (1st Cir. 1987). Richard acted corruptly by:

    (a) Knowingly filing false evidence to mislead the court

    (b) Deliberately concealing exculpatory evidence

    (c) Colluding with Judge McConnell to predetermine outcomes

    (d) Suborning perjury from URI officials

107. Nexus Requirement (§ 1503 Omnibus Clause): Under 18 U.S.C. § 1503, the First Circuit requires proof that the defendant's conduct had the "natural and probable effect" of interfering with the due administration of justice. This nexus requirement means the obstructive act must relate to a pending judicial proceeding and have a reasonably foreseeable tendency to influence, obstruct, or impede that proceeding. Actual obstruction is not required; an endeavor suffices. United States v. Desir, 273 F.3d 39, 42 (1st Cir. 2001). Richard's fraud necessarily obstructed justice by:

    (a) Preventing fair adjudication of claims

(b) Corrupting the fact-finding process

(c) Denying Plaintiff due process

108. The harm from obstruction of justice extends beyond interference with specific proceedings to encompass damage to public confidence in the legal system—the recognition that, as courts have stated, justice must not only be done but must appear to be done. Cf. Offutt v. United States, 348 U.S. 11, 14 (1954) ('justice must satisfy the appearance of justice') (addressing judicial impartiality).

## COUNT XIII: DEFAMATION

109. Plaintiff realleges and incorporates paragraphs 1-108 as if fully set forth herein.

110. Under Rhode Island law, defamation requires: (1) a false and defamatory statement; (2) unprivileged publication to a third party; (3) fault amounting at least to negligence; (4) damages or actionability per se. Alves v. Hometown Newspapers, Inc., 857 A.2d 743, 751 (R.I. 2004).

111. False and Defamatory Statements: Steven Richard's false and defamatory statements so alarmed Plaintiff that he filed complaints and notified Nixon Peabody's senior partners, the First Circuit, DOJ, and Rhode Island Disciplinary Counsel. Despite detailed submissions of fraud in Rhode Island federal court, no

corrective action ensued, and Mr. Richard's abusive courtroom conduct continued unabated. Steven Richard and Defendants published numerous false statements including:

(a) Plaintiff's litigation was "vexatious" when it had survived dismissal

(b) Plaintiff violated FERPA when he was not subject to FERPA

(c) Plaintiff engaged in "unprofessional conduct" when evidence showed the opposite

(d) Plaintiff's "merit-based claims" were "baseless" after federal court found merit

112. Publication: Statements were published through:

(a) ECF filings accessible to the public

(b) Service on multiple parties

(c) Communications to URI officials

113. Judicial Proceedings Privilege: Statements made in judicial proceedings are absolutely privileged when pertinent, material, or relevant to the issues in the proceeding. This absolute privilege applies regardless of malice and protects against defamation liability. The privilege is lost only when statements are made with actual malice and not pertinent, material, or relevant to the judicial proceeding.

114. Actual Malice: Richard acted with actual malice—i.e., with knowledge of falsity or reckless disregard for the truth—and made statements not pertinent, material, or relevant to the proceeding, as shown by:

    (a) Possession of contradictory evidence that undercut his assertions;

    (b) Awareness that Plaintiff's claims had survived dismissal, yet portraying them as baseless and vexatious;

    (c) Deliberate misstatement of FERPA law to mislead the tribunal;

    (d) Intent to injure Plaintiff's reputation through knowingly false accusations.

115. Per Se Defamation: Statements impugning Plaintiff's fitness and integrity in his profession are defamatory per se. *See Marcil v. Kells*, 936 A.2d 208, 213–14 (R.I. 2007); False accusations of "vexatious litigation" and "unprofessional conduct" injure a professor's professional reputation.

116. Damages: Plaintiff suffered:

    (a) Injury to professional reputation

    (b) Impaired ability to secure future employment

    (c) Emotional distress

    (d) Economic losses

## COUNT XIV: VIOLATION OF PROFESSIONAL CONDUCT RULES

117. Plaintiff realleges and incorporates paragraphs 1-116 as if fully set forth herein.

118. Ethical Rules—No Private Right; Evidentiary Use; Sanctions: Violations of the Rules of Professional Conduct do not create a private cause of action, but "may be evidence of a breach of the applicable standard of conduct." *R.I. Rules of Prof'l Conduct*, Scope ¶ 20. Plaintiff invokes those violations as evidence of (i) the standard of care and breach of fiduciary duty; and (ii) malice/bad faith supporting punitive measures. Courts may also impose sanctions and fee-shifting for bad-faith litigation conduct under their inherent powers, and for unreasonably and vexatiously multiplying proceedings. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–50 (1991) (inherent-power sanctions, including fees); 28 U.S.C. § 1927.

119. Rule 3.3 - Candor Toward Tribunal: Prohibits Steven Richard and Nixon Peabody's solicitors from:

(a) Knowingly making false statements of fact or law

(b) Failing to correct false statements of material fact or law

(c) Offering evidence known to be false

120. Richard violated Rule 3.3 by:

   (a) Filing fabricated documents

   (b) Misrepresenting FERPA's applicability

   (c) Deliberately misstating law

  (d)  Concealing exculpatory evidence

 (e) Failing to correct false statements when discovered


121. Rule 4.1 - Truthfulness in Statements to Others: Prohibits false statements of

material fact or law. The Rhode Island Bar Complaint (pages 38-49) documents

numerous Rule 4.1 violations with specific examples.


122. Rule 8.4 - Misconduct: Prohibits:

   (a) Conduct involving dishonesty, fraud, deceit or misrepresentation

   (b) Conduct prejudicial to the administration of justice

   (c) Conduct manifesting bias or prejudice based on race


123. Richard violated Rule 8.4 through:

   (a) A sustained pattern of fraudulent conduct

   (b) Collusion with Judge McConnell

   (c) Deploying racially coded "dog-whistle" rhetoric in court filings to dehumanize

a Black professor—casting professor Fosu as a misogynist and an unreasonable

dangerous Black man—without factual basis. It Steven Richard's belief that

unequivocal voices and raw emotions in our federal courts should only be reserved for loud white men and white women seeking justice.

124. Civil Liability for Professional Misconduct. Rhode Island recognizes civil liability when a lawyer's professional misconduct breaches duties owed to a client—via legal malpractice (negligence), breach of fiduciary duty, or fraud. See *Vallinoto v. DiSandro*, 688 A.2d 830, 836–37 (R.I. 1997) (legal malpractice requires duty, breach, and resulting damages); *Audette v. Poulin*, 136 A.3d 1132, 1136–39 (R.I. 2016) (duty analysis; malpractice/fiduciary-duty claims); *Behroozi v. Kirshenbaum*, 134 A.3d 164, 168–72 (R.I. 2016) (malpractice and fraud claims). Although ethical-rule violations do not create a private cause of action, they may be evidence of the standard of care or bad faith/malice. *R.I. Rules of Prof'l Conduct*, Scope ¶ 20. Courts may also address egregious litigation misconduct through sanctions and fee-shifting under inherent powers or 28 U.S.C. § 1927. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–50 (1991).

COUNT XV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

125. Plaintiff realleges and incorporates paragraphs 1-124 as if fully set forth herein.

126. Rhode Island recognizes intentional infliction of emotional distress claims requiring: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) severe emotional distress; (4) causation. Vallinoto v. DiSandro, 688 A.2d 830, 837 (R.I. 1997).

127. Extreme and Outrageous Conduct: Conduct must "exceed all bounds of decency" and be "utterly intolerable in a civilized society." Swerdlick v. Koch, 721 A.2d 849, 862 (R.I. 1998). Steven Richard's egregious conduct satisfies this standard:

   (a) Orchestrating termination of a professor of practice through a scorching conspiracy of fraud

   (b) Deploying racist, dog-whistle rhetoric to discredit and demean an African-American whistleblower and subject-matter expert, who challenged systemic racism and exposed corrupt DEI practices, intimidation, bullying and fraudulent employment policies.

   (c) Corrupting the judicial process through collusion

(d) Destroying a stellar career to silence protected speech of the only professor on campus who had the subject-matter expertise, knowledge, and courage to defend constitutional rights—rights that had been eviscerated by all-white administrators and their handpicked DEI officers and enforcers.

128. Intent or Recklessness: Defendants acted intentionally, knowing their fraud would cause severe distress to a professor fighting for his career and reputation.

129. Severe Emotional Distress (IIED Standard). Rhode Island adopts the Restatement (Second) of Torts § 46: liability arises only where the defendant's conduct is "extreme and outrageous," intended or in reckless disregard to cause distress, and the plaintiff suffers severe emotional distress—conduct "beyond all possible bounds of decency" and "utterly intolerable in a civilized community." *Hoffman v. Davenport-Metcalf*, 851 A.2d 1083, 1090 (R.I. 2004); *Champlin v. Washington Tr. Co.*, 478 A.2d 985, 989 (R.I. 1984). Rhode Island also requires physical symptomatology causally linked to the conduct. *Vallinoto v. DiSandro*, 688 A.2d 830, 838 (R.I. 1997) (citing *Reilly v. United States*, 547 A.2d 894, 898–99 (R.I. 1988)). The First Circuit has recognized that reputational ruin, false accusations, and loss of livelihood may, on proper proof, satisfy the severity component under Rhode Island law. *Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 381 (1st Cir. 1991). Plaintiff has suffered:

(a) Acute anxiety and panic episodes palpitations, shortness of breath, elevated blood pressure, and emergency room visits.

(b) Sleep disturbance/insomnia persisting for months; nightmares/flashbacks consistent with trauma.

(c) Social withdrawal, humiliation and financial strain not being able to pay children's school fees, home and housing expenses made only possible through Diversity Think Tank Board Trustees.

130. Professor Fosu endured nothing less than a cruel academic lynching in the blue state of Rhode Island—orchestrated with institutional power wielded by powerful Democrats and executed through lies that Nixon Peabody knew were lies. Steven Richard filed false statements that he knew were false, because Richard and his entire firm Nixon Peabody were repeatedly informed in writing and in official federal complaints, again and again, and Nixon Peabody could point to no primary evidence to support their numerous false statements filed in court. Complaint after complaint vanished into the corrupt Democratic Party and court machinery that has long dehumanized independent Black thinkers in America and lynched innocent Blacks in America.

131. Nixon Peabody and their URI conspirators who enabled this extensive fraud in court will be called to account—in public and under oath—for believing they could simply snap their fingers, fabricate a record, and terminate a pristine Black

professional. This normalized practice of fraud in Rhode Island courts is protected by Attorney General Peter Neronha and former U.S. Attorney Zachary Cunha, both close confidants of Steven Richard.

132. Defendants' conspiratorial conduct—abetted by Nixon Peabody and URI's stable of solicitors—also surfaces in related federal litigation, including *Daneshwar Persaud v. University of Rhode Island, Boss, et al.*, **No. 1:25-cv-00307-MSM-PAS**, (https://diversitythinktank.org/wp-content/uploads/2025/08/Dan-Persaud-v-University-of-Rhode-Island-1-25-cv-00307-MSM-PAS-2025.pdf and https://diversitythinktank.org/wp-content/uploads/2025/10/091525-DAN-PERSAUD-MTD.pdf); and, *Nsabumuremyi v. Fontes, University of Rhode Island, et al.*, **No. 25-cv-535**. (https://diversitythinktank.org/wp-content/uploads/2025/12/Jean-Nsabumuremyi-v.-Michelle-Fontes-University-of-Rhode-Island-et-al.-10-15-2025.pdf). As these seminal cases will expose the deeply embedded fraud at URI and within the Rhode Island judiciary and corrupt criminal justice system that targets and destroys high-minded Black and Brown citizens.

133. "Good name in man and woman, dear my lord,

Is the immediate jewel of their souls;

Who steals my purse steals trash; 'tis something, nothing;

'Twas mine, 'tis his, and has been slave to thousands;

***BUT he that filches from me my good name***

***Robs me of that which not enriches him***

***And makes me poor indeed."*** Othello 3.3 (Iago).


134. Let it be clearly understood by Nixon Peabody and any solicitor who steps forth
to defend the corrupt law firm that has destroyed my life—and many lives in Rhode
Island—with lies—supported and protected by the hegemon of Rhode Island's
judiciary, Chief Judge McConnell, and his Democratic Party oligarchs who protect
Nixon Peabody's fraud in federal court (including former Rhode Island Attorney
General, Senator Sheldon Whitehouse, Attorney General Peter Neronha): I am a
MAN. A man with a pristine soul who will never permit his dignity to be trampled
and shattered by misguided, corrupt, ignorant men and women who wield extreme,
unchecked power in this corrupt Democratic state of Rhode Island. I am a witness
to—and attempting to halt—the debilitating RACISM and normalized MALICIOUS
FRAUD in Judge McConnell's court. I am a man—born with immense privilege and
courage, who has never looked the other way—and I will fight this evil injustice—
and all derivatives of evil—head-on until my last breath. Baruch HaShem.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and award the following relief:

1) A declaratory judgment that Defendants' acts and omissions, as alleged herein, violated Plaintiff's rights under the Constitution and laws of the United States and Rhode Island.

2) Preliminary and permanent injunctive relief enjoining Defendants, their agents, and those in active concert with them from continuing the unlawful practices described herein, including any further retaliation, intimidation, or interference with Plaintiff's rights.

3) Reinstatement to a position commensurate with Plaintiff's qualifications and experience or, in the alternative, front pay in lieu of reinstatement.

4) Expungement of specific false and stigmatizing records in Plaintiff's personnel file and employment records generated or disseminated by Defendants as a result of the conduct alleged herein.

5) Compensatory damages for economic losses including lost wages, lost future earnings, and lost benefits, in an amount to be determined at trial.

6) Compensatory damages for non-economic losses including reputational harm, emotional distress, and other consequential injuries, in an amount to be determined at trial.

7)  Punitive damages against Defendants in an amount of 48,000,000 sufficient to punish and deter the conduct alleged herein, to the extent permitted by applicable law.

8)  Treble damages pursuant to 18 U.S.C. § 1964(c) for violations of the Racketeer Influenced and Corrupt Organizations Act.

9)  Lawyer's fees and costs as permitted by 42 U.S.C. § 1988, 18 U.S.C. § 1964(c), and any other applicable provision of law.

10) Pre-judgment and post-judgment interest as allowed by law.

11) Such other and further legal and equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

## **CERTIFICATION**

VERIFICATION PURSUANT TO 28 U.S.C. § 1746

I, Louis Kwame Fosu, declare under penalty of perjury under the laws of the United States of America that the foregoing factual allegations are true and correct to the best of my knowledge, information, and belief, formed after reasonable inquiry.

Executed on December 30, 2025, at Providence County, Rhode Island.

Louis Kwame Fosu
Plaintiff, Pro Se
43 Connecticut Street
Cranston, RI 02920
+1 202-406-0911
Loufosu@diversitythinktank.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 31, 2025, I served the foregoing by mail upon the following counsel and parties of record:

**William Connolly**, General Counsel
Nixon Peabody LLP,
One Citizens Plaza, Suite 500, Providence, RI 02903-1345
wconnolly@nixonpeabody.com

**Stephen Zubiago**, CEO and Managing Partner
Nixon Peabody LLP,
One Citizens Plaza, Suite 500, Providence, RI 02903-1345
szubiago@nixonpeabody.com

**Steven M. Richard**, Partner, Nixon Peabody LLP,
One Citizens Plaza, Suite 500, Providence, RI 02903-1345
srichard@nixonpeabody.com

One Citizens Plaza, Suite 500, Providence, RI 02903-1345

Louis Kwame Fosu
Plaintiff, Pro Se
43 Connecticut Street
Cranston, RI 02920
+1 202-406-0911
Loufosu@diversitythinktank.org