**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| LOUIS KWAME FOSU,<br><br>Plaintiff,<br><br>V.<br><br>STEVEN RICHARD, individually and in his capacity as Partner at Nixon Peabody LLP, NIXON PEABODY LLP, ANDREW I. GLINCHER (Senior Chairman) Nixon Peabody LLP, STEPHEN D. ZUBIAGO (CEO) Nixon Peabody, LLP, WILLIAM CONNOLLY (General Counsel) Nixon Peabody LLP, STACIE COLLIER (Chief Talent Officer) Nixon Peabody LLP, TABITHA ROSS (Chief HR Officer) Nixon Peabody LLP,<br><br>Defendants. | C.A. No. 1:25-cv-691-MRD-PAS |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

DEFENDANTS,

By Their Attorney,

Jeffrey S. Brenner (#4369)
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, RI  02903
Tel:    (401) 454-1042
Fax:    (866) 947-0883
Email: jbrenner@nixonpeabody.com

4919-8639-3990.1

`

Defendants Steven M. Richard ("Attorney Richard"), Nixon Peabody LLP, Andrew I. Glincher, Stephen D. Zubiago, William Connolly, Stacie Collier, and Tabitha Ross (collectively with Attorney Richard, the "Nixon Peabody Defendants") submit this memorandum in support of their motion seeking the Court's prompt dismissal of the *pro se* complaint filed by Plaintiff Louis Kwame Fosu ("Fosu") on December 31, 2025.[1]  To date, Fosu has not properly effectuated service of process upon any of the Nixon Peabody Defendants in accordance with Federal Rule of Civil Procedure Rule 4.  Regardless, the Nixon Peabody Defendants will not sit back idly in the face of Fosu's vexatious and frivolous lawsuit, and they request its prompt dismissal under Rule 12(b)(6).

## I.      INTRODUCTION

Fosu's antics are well-known to the Court.   As is evident in another lawsuit with a long, tortured history that has been pending before the Court for nearly five years, Fosu's habitual and purposeful tactics routinely attack individuals at his whim and obstruct the orderly administration of justice at every turn.  *See Fosu v. Univ. of Rhode Island, et. al*, C.A. No. 21-cv-279-SJM-AKJ ("URI Litigation").  Attorney Richard represents the defendants in the URI Litigation (the "URI Defendants").  None of the other Nixon Peabody Defendants have any role in the URI Litigation.

In the URI Litigation, during the fall of 2023, Fosu's *pro hac vice* attorneys and second Rhode Island attorney abruptly withdrew their appearances because they could no longer be associated professionally and ethically with Fosu.  Proceeding *pro se* since that time, Fosu has repeatedly filed documents in the URI Litigation devoid of any proper purpose, solely to level his wide-ranging *ad hominem* attacks while self-proclaiming his "pristine soul."

---

[1]      In his 58-page complaint against the Nixon Peabody Defendants, Fosu mentions Defendants Zubiago, Glincher, Connolly, Collier and Ross in a mere paragraph.  (Compl. ¶ 3). These individual defendants have been named improperly by Fosu consistent with his agenda to tarnish their professional reputations in a public filing.

1

`

Fosu's lawsuit against the Nixon Peabody Defendants is more of the same. Fosu hurls his usual rants and scurrilous accusations against the Court, the Nixon Peabody Defendants, the URI Defendants, and others. Fosu saturates his pleading with his misguided beliefs that Chief Judge J. McConnell, Jr. (as the presiding judge in the URI Litigation until his recusal on October 10, 2025) and Attorney Richard (in his representation of the URI Defendants) concocted a grand criminal conspiracy against him (purportedly aided and supported by Rhode Island's "corrupt judicial apparatus" and "powerful Democratic Party officials"). (Compl. at p. 2).

Fosu's beliefs have already been rejected multiple times by the Court in the URI Litigation, by the First Circuit Judicial Council in dismissing Fosu's judicial complaint against Chief Judge McConnell, and the Rhode Island Supreme Court's Office of Disciplinary Council in dismissing Fosu's two disciplinary complaints against Attorney Richard. Undeterred, Fosu regurgitates the same slew of false allegations against the Nixon Peabody Defendants in this lawsuit. It is time for the Court to put a stop to Fosu's antics. The Court should promptly dismiss this vexatious and frivolous lawsuit against the Nixon Peabody Defendants with prejudice, coupled with a stern and strong condemnation of Fosu's continuing abusive tactics and misuse of the Court's time and resources.

## II.   BACKGROUND

### A.   Fosu's Repeated Misconduct as a Pro Se Litigant in the URI Litigation[2]

---

[2]   While assessing a motion to dismiss, the Court may take judicial notice of matters of public record, such as filings in the URI Litigation and the docket of that case, without converting the motion to one for summary judgment. *See, e.g.*, *Kolbe v. BAC Home Loans Servicing, L.P.*, 738 F.3d 432, 479 (1st Cir. 2013); *Murphy v. Cent. Falls Det. Facility Corp.*, No. 14-203 S, 2015 WL 1969178, at *3 n.2 (D.R.I. Apr. 30, 2015) (considering materials from other judicial proceedings and public docket filings at the motion to dismiss stage).

2

4919-8639-3990.1

`

Initially represented by counsel, Fosu filed the URI Litigation on July 2, 2021, challenging URI's decision not to renew his year-to-year faculty appointment for the 2021-22 academic year.[3] After Chief Judge McConnell granted in part and denied in part the URI Defendants' Rule 12(b) Motion (*see Fosu,* 590 F. Supp. 3d at 457-63), the URI Litigation proceeded to the discovery phase. The Court extended the discovery and dispositive motion deadlines several times (at the joint request of the parties' counsel), so that by October 2023, the dispositive motion deadline was by November 3, 2023.  (URI Litigation, Text Orders entered 11/18/22, 8/21/23, and 10/2/23).  On October 31, 2023, without any prior notice to Attorney Richard, Fosu's *pro hac vice* attorneys abruptly moved to withdraw their appearances representing to the Court that they could no longer represent Fosu "consistent with [their] professional and ethical obligations."  (*Id.*, ECF No. 39).[4] On November 2, 2023, Fosu's second Rhode Island attorney[5] moved to withdraw his appearance because of "an irreparable breakdown of the attorney-client relationship."  (*Id.*, ECF No. 41). Chief Judge McConnell allowed the attorneys' withdrawals of their appearances, set a deadline of December 4, 2023 for replacement counsel to enter an appearance or for Fosu to confirm that he would proceed *pro se*, and stayed the summary judgment filing deadline.  (*Id.*, Text Orders entered 11/1/23 and 11/3/23 Text Orders).

---

[3]    In his filings, Fosu has continuously misstated the status of his former employment at URI. Fosu was not employed as a tenured faculty member nor as a professor on a tenure track.  Fosu held a position known as a Faculty of Practice, which was a teaching instructional position appointed on an academic year basis, with renewals solely at URI's discretion and subject to the limitation under a collective bargaining agreement that the position could not exceed a total of five years cumulatively.  *Fosu v. Univ. of R.I.*, 590 F. Supp. 3d 451, 456 (D.R.I. 2022).

[4]    On November 9, 2023, Fosu's former *pro hac vice* attorneys filed a notice of attorneys' lien totaling nearly $1 million.  (URI Litigation, ECF No. 43).

[5]    Fosu's first Rhode Island attorney withdrew her appearance more than a year earlier on January 31, 2022.  (*Id.*, ECF No. 13)

4919-8639-3990.1

`

On December 1, 2023, Fosu informed the Court that he would proceed *pro se*.  (ECF No. 44).  On December 15, 2023, Chief Judge McConnell held a status conference with Attorney Richard and Fosu.  Fosu requested that the Court allow him an additional sixty days to obtain replacement counsel, which Chief Judge McConnell granted.  Chief Judge McConnell entered a Text Order allowing Fosu until February 15, 2024 to obtain replacement counsel or reconfirm his pro se appearance and resetting the summary judgment motion filing deadline to March 15, 2024.  (*Id.*, Text Order entered 12/15/23).

Promptly after the December 15 status conference, Fosu unleashed a litany of attacks against Attorney Richard and the URI Defendants in six motions filed in rapid succession.  On January 19, 2024, Chief Judge McConnell denied all of Fosu's motions, stating as follows:

> Before the Court are six motions filed by Plaintiff Louis Kwame Fosu, arising out of his lawsuit alleging employment discrimination at the University of Rhode Island.  ECF Nos. 47, 48, 53-56.  The Defendants object to all of these motions and allege that [the] motions "seek no relief from the Court and have been filed solely as his means to engage in a public attack against Defendants, their counsel, and others.  The URI Defendants request that the Court address Plaintiff's misuse of the docket."  ECF No. 57 at 1.
>
> The Court agrees with the Defendants.  The motions not only request no proper court relief, but they are also scurrilous and inaccurately describe defense counsel's conduct in the litigation, which this Court has seen to be nothing but professional, ethical, and proper.
>
> The Court DENIES the Motions and orders them placed under seal.  ECF No[s]. 47, 48, 53-56.

(*Id.*, ECF No. 58 at 1-2).

Rather than respecting the Court's ruling and allowing the URI Litigation to proceed forward in an orderly manner consistent with Chief Judge McConnell's December 15, 2023 Text Order, Fosu escalated his *ad hominem* attacks to target the Court and particularly Chief Judge McConnell.  On March 7, 2024, Fosu moved for Chief Judge McConnell's recusal based upon

4

4919-8639-3990.1

`

"corruption and gross judicial misconduct." (*Id*., ECF No. 59). Concurrently, as discussed in more detail in the next section below, Fosu filed a 59-page complaint with the Judicial Council of the First Circuit, which alleged that, "in a 'biased, mala fide, [] deceptive,' and 'intellectually dishonest order' denying and sealing several of [Fosu's] motions, the judge deliberately concealed conflicts of interest due to a purported friendship and professional relationship with [Attorney Richard] and with 'prominent politicians named in [Fosu's] motions.'" *See In re Complaint* No. 01-24-90006, Order of the Judicial Council of the First Circuit at 1 (July 30, 2025) (Barron, J) (quoting Fosu's complaint) ("Judicial Council Order").[6]

On March 8, 2023, Chief Judge McConnell entered a stay of the URI Litigation pending the review of Fosu's judicial complaint, which remained in effect for the next eighteen months. In early 2023, Fosu also filed two disciplinary complaints against Attorney Richard with the Rhode Island Supreme Court's Office of Disciplinary Counsel, as addressed in the next section below.

On July 30, 2025, the Judicial Council entered its written determination that Fosu's complaint against Chief Judge McConnell was "baseless" and "not cognizable." (Judicial Council Order at 1). On August 4, 2025, Chief Judge McConnell vacated the stay in the URI Litigation, and he scheduled a status conference to occur on September 10, 2025 for the purpose of "set[ting] a schedule and deadlines for bringing this case to a conclusion." (URI Litigation, 8/4/25 Text Order & Notice).

During the five-week period between Chief Judge McConnell's lifting of the stay and the scheduled status conference, Fosu concocted more obstructionist antics to derail the proceedings again. Despite having ample time to do so, Fosu never informed Chief Judge McConnell nor

---

[6]    The Judicial Council Order is available on the First Circuit's website, https://www.ca1.uscourts.gov/sites/ca1/files/01-24-90006.O.pdf (last visited January 8, 2026).

4919-8639-3990.1

`

Attorney Richard of his defiant intention not to appear at the court-ordered conference. On September 10, 2025, within ten minutes of the 10:00 a.m. starting time of the video conference, Fosu filed a "Motion to Withdraw as Pro Se Litigant 09102025," (*Id.*, ECF No. 67) (totaling 234 pages of filed documents), which was replete with more of Fosu's scandalous attacks against the Court, Chief Judge McConnell, the URI Defendants, and others. Fosu purported that he filed this voluminous motion "predicated on the profound belief, supported by corroborating evidence, that Chief Judge John McConnell wields excessive and corrupt power within this jurisdiction, thereby rendering effective self-representation impossible." (*Id.*, ECF No. 67 at p. 1). Fosu proclaimed that, "the gross misconduct of Chief Judge McConnell, coupled with the egregious misrepresentation of facts and deliberate misrepresentation of law by McConnell's friend, URI solicitor Steven Richard," effectively denied him access to the courts. (*Id.*, ECF No. 67 at p. 2).

Attorney Richard appeared at the status conference as required, which Chief Judge McConnell adjourned within a few minutes when it became evident that Fosu would not attend. During the brief conference, Attorney Richard indicated that he obviously did not have the opportunity to review Fosu's 234-page filing (received minutes earlier) and that the URI Defendants would file their opposition within the two-week response period. A few minutes after the conference, Fosu sent an improper email communication directly to Chief Judge McConnell, which copied Attorney Richard and others, that proudly touted his intentional absence from the conference.

On September 23, 2025, Attorney Richard timely filed the URI Defendants' opposition to Fosu's motion and their cross-motion to dismiss the URI Litigation under Rule 41(b) because of Fosu's failure to properly prosecute the action and abide by the Court's orders (including his intentional absence from the September 10 conference). (*Id.*, ECF No. 68). Fosu resumed his

6

4919-8639-3990.1

`

attacks by filing more invective-laden motions disparaging the Court, Attorney Richard, the URI

Defendants, and others, while yet again spouting his rants and beliefs about a criminal conspiracy

against him and reiterating his unjustified demands for Chief Judge McConnell's recusal.  (*Id.*,

ECF Nos. 69-71).

On October 10, 2025, Chief Judge McConnell entered his Order of Recusal stating as

follows:

> Louis Kwame Fosu has again moved to recuse the judge who has presided over this
> case for over three years.  In the present motion, Mr. Fosu continues to make
> statements about the judge that are false and incendiary.  After years of false
> accusations from Mr. Fosu, the Court has finally reached its limit in its ability to be
> fair and impartial to Mr. Fosu in this case.  For none of the reasons stated in his
> Motion to Recuse, the Court recuses from this matter.

(*Id.*, ECF No. 72 at pp. 1-2).  Judges McElory and DuBose and Magistrate Judges Sullivan and

Moses entered their Orders of Recusal promptly thereafter.  Because Fosu's attacks caused the

recusal of Rhode Island's entire federal judiciary, New Hampshire Federal District Court Judge

McAuliffe and Magistrate Judge Johnstone preside in the URI Litigation.  (*Id.*, ECF Nos. 79-80).

In more of his obstructionist antics, Fosu has filed a motion protesting the assignment of

the New Hampshire federal judges and demanding the transfer of the URI Litigation to the District

of Columbia (which has absolutely no connection to any aspect of the case).  (ECF No. 81).  In

opposition to Fosu's latest frivolous motion and other similarly baseless motions, the URI

Defendants have requested that the Court address Fosu's continuing misconduct and abuse of

process, as the URI Litigation approaches its fifth year on the Court's docket due to the many

disruptions and delays entirely caused by Fosu.

While Fosu has convinced himself that Chief Judge McConnell and Attorney Richard

conspired against him during the URI Litigation, the Court's docket shows the reality of the

proceedings and the few interactions between the Chief Judge McConnell and the parties over the

4919-8639-3990.1

`

course of the litigation.  During the four-year and three-month interval spanning from Fosu's

initiation of the URI Litigation on July 2, 2021 and Chief Judge McConnell's recusal on October

10, 2025, Attorney Richard interacted with Chief Judge McConnell just three times regarding the

case:

- While legal counsel represented Fosu, Chief Judge McConnell held a virtual hearing on February 4, 2022 to address the URI Defendants' Rule 12(b)(6) motion, which was observed by the first-year class of law students at Roger Williams University School of Law.  On March 14, 2022, Chief Judge McConnell entered his written ruling granting the Rule 12(b)(6) motion in part and denying it in part, allowing some of Fosu's claims to proceed past the pleadings stage.  *Fosu*, 590 F. Supp. 3d at 457-63.  Fosu cites Chief Judge McConnell's Rule 12(b)(6) analysis favorably in his pleading against the Nixon Peabody Defendants (Compl, ¶ 10), so he apparently does not think that Chief Judge McConnell and Attorney Richard were conspiring against him during the initial stages of the URI Litigation or as it progressed through discovery.[7]

- As noted above, after Fosu's *pro hac vice* and second Rhode Island counsel abruptly withdrew their appearances during the fall of 2023, Chief Judge McConnell held a virtual status conference with Attorney Richard and Fosu on December 15, 2023, in which the Court afforded Fosu with an additional sixty days to seek to obtain replacement counsel and reset the summary judgment filing deadline.  It is apparently at or about this time that Fosu must believe that Chief Judge McConnell and Attorney Richard concocted a conspiracy against him.

- As noted above, Chief Judge McConnell held a virtual status conference on September 10, 2025, which was designed to update the deadlines in the URI Litigation after the vacating of the eighteen-month stay caused by Fosu's judicial complaint against Chief Judge McConnell.  Attorney Richard attended the court-ordered conference as required, but Fosu defiantly did not appear, which he followed with more attacks that resulted in Chief Judge McConnell's recusal for the reasons stated in the October 10, 2025 Order

---

[7]    During discovery, Chief Judge McConnell issued a ruling in Fosu's favor regarding the required scope of URI's document productions.  (URI Litigation, 1/17/23 Order Granting Motion to Compel (ECF No. 32)).  Fosu cannot be conceivably claiming that this ruling was somehow part of the purported conspiracy.  Fosu cannot have it both ways in his characterizations of the Court's rulings – praising the ones that he likes, while asserting that those he dislikes equate to conspiratorial conduct.

4919-8639-3990.1

`

(ECF No. 72), followed by prompt recusals by the rest of Rhode Island's federal judiciary.

Finally, delving deeper into Fosu's misguided beliefs about an alleged conspiracy against him involving this Court, he alludes to two other pending lawsuits brought by other *pro se* litigants against URI.  (Compl. at pp. 2-3).  Nixon Peabody is not URI's legal counsel in either lawsuit, and the firm has not been involved in any aspect of the matters alleged in those cases.  Fosu's reference to these two lawsuits, which do not involve him in any way, is yet another of his many red herrings with no conceivable relevance to either the URI Litigation or this action against the Nixon Peabody Defendants.

B.    **The Dismissals of Fosu's Disciplinary Complaints Against Chief Judge McConnell and Attorney Richard**

As noted above and addressed in more detail here, on July 30, 2025, the First Circuit's Judicial Counsel entered its Order (written by Chief Judge Barron) dismissing Fosu's judicial complaint against Chief Judge McConnell as "baseless and not cognizable." As the Judicial Council's Order states, Fosu wrongly and falsely accused Chief Judge McConnell of engaging in *ex parte* communications with Attorney Richard and issuing a biased ruling because of a purported friendship between them. (Judicial Council Order at 2).  Chief Judge Barron conducted a detailed examination of the chronology of events and proceedings in the URI Litigation and easily concluded that Fosu's allegations of judicial misconduct were "without merit."  (*Id*. at 2-4).  As Chief Judge Barron wrote, "[t]here is no information in the record or the complaint suggesting that, in presiding over complainant's case, the judge was biased, deceptive, or dishonest, had a conflict of interest based on personal or professional relationships, political opinions, or any other reason, ignored complainant's filings, protected defense counsel, or was otherwise improperly motivated."  (*Id*. at 4).  As confirmation of Chief Judge McConnell's impartiality throughout the

9

`

URI Litigation, Chief Judge Barron cited the Court's Rule 12(b)(6) ruling and granting of motions in Fosu's favor. (*Id.*).

Separately, Fosu filed two disciplinary complaints against Attorney Richard accusing him of "Fraud on the Court" concerning his representation of the URI Defendants. (Compl.¶¶ 12, 22-24). The Rhode Island Supreme Court's Office of Disciplinary Council promptly dismissed both baseless complaints. In addition to suing Attorney Richard in this litigation, Fosu vows that he will next bring a lawsuit against the "Rhode Island bar" "for covering up this extensive fraud." (*Id.* ¶ 24).

As detailed above, Fosu refused to accept the rejections of his frivolous disciplinary complaints and escalated his attacks. Chief Judge McConnell understandably reached his limit in entering his recusal, as did the rest of Rhode Island's federal judiciary. Now, the Nixon Peabody Defendants are forced to defend themselves in this frivolous lawsuit, which must be promptly dismissed because of Fosu's clear failure to state any plausible claim for relief, as addressed below.

### C.    Fosu's Implausible Allegations in This Lawsuit

#### 1.    Fosu's Renewed Attacks Against the Court and Chief Judge McConnell

In his Complaint, Fosu resorts to his false and incendiary accusations against the Court and Chief Judge McConnell. As just one of the many examples, Fosu pleads that the Court operates "a corrupt judicial apparatus in the blue state of Rhode Island" through "a practice of law normalized by fraud and shielded by the hegemon of Rhode Island's judiciary, Chief Judge McConnell" and his "partners in crime," naming some of Rhode Island's federal and state officials. (Compl. at pp. 1-2). No litigant should ever be permitted to proceed as egregiously as Fosu has done and continues to do – period, especially where his continuing antics have caused the recusals of Rhode Island's entire federal judiciary. *See Tavares v. Enterprise Rent-A-Car*, C.A. No. 13-

10

`

521S, 2015 U.S. Dist. LEXIS 122401 (D.R.I. Jan. 16, 2015) (sanctioning a *pro se* litigant for his perpetual *ad hominem* attacks against a Magistrate Judge and a defense attorney). *See also Lawless v. United States*, 797 F. Supp. 3d 1132, 1143 (C.D. Cal. 2025) (finding *pro se* party's multiple frivolous filings, including misconduct complaints and lawsuits against judges and counsel, "rais[ed] a reasonable inference of an intent to harass the Court."); *Koehl v. Greene*, 424 F. App'x 61, 62 (2d Cir. 2011) (citation omitted) (affirming sanction against a *pro se* litigant who ignored court's orders "to respect the dignity of the judicial proceeding" and accused the court of "twisted" and "biased" conduct).

### 2.    Fosu's Renewed Attacks Against Attorney Richard

The Nixon Peabody Defendants will not dignify Fosu's rote accusations against Attorney Richard with a point-by-point recitation. Fosu's diatribes asserting "Steven Richard's Pattern of Fraudulent Conduct" and "Specific Instances of Fraud and Misrepresentation" regurgitate what he has spouted unsuccessfully before the Court during the past two-and-a-half years as a *pro se* litigant in the URI Litigation, and within the two promptly dismissed disciplinary complaints against Attorney Richard.  (Compl. ¶¶ 11-24).

## III.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6)

When the Court evaluates the plausibility of claims stated in a pleading, it starts by "isolat[ing] and ignor[ing] statements in the complaint that simply offer legal labels and conclusions or merely rehash the cause-of-action elements, then tak[ing] the complaint's well-pled (i.e. non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and [deciding] if they plausibly narrate a claim for relief."  *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (quoting *Zenon v. Guzman*, 824 F.3d 611, 615-16 (1st Cir. 2019)) (internal

4919-8639-3990.1

`

quotation marks and alterations omitted). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific job' that compels [the Court] 'to draw on' [its] 'judicial experience and common sense.'" *Id*. (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)).

## B. Federal Rule of Civil Procedure 9(b)

Fosu's Complaint is replete with subjective, conclusory, and scandalous allegations of fraud that fall far short of even approaching the heightened factual pleading requirements of Rule 9(b), which provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The First Circuit has explained that "[t]he circumstances to be stated with particularity under Rule 9(b) generally consist of 'the who, what, where, and when of the allegedly [misleading] representation.'" *Kaufman v. CVS Caremark Corp.*, 836 F.3d 88, 91 (1st Cir. 2016) (quoting *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004)) (alteration in original). The core purposes of Rule 9(b) are "to place the defendants on notice and enable them to prepare meaningful responses," "to preclude the use of a groundless fraud claim as a pretext to discovering a wrong," and "to safeguard defendants from frivolous charges [that] might damage their reputations." *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 289 (1st Cir. 1987).

## C. Reviewing a *Pro Se* Litigant's Pleading

"Our judicial system zealously guards the attempts of *pro se* litigants on their own behalf." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). This includes liberally construing *pro se* pleadings. *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 75 (1st Cir. 2014); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice"). This generous standard, however, is not boundless; "pro se status does not insulate a party from complying with procedural and substantive

4919-8639-3990.1

`

law." *Ahmed*, 118 F.3d at 890. Rather, like a party represented by counsel, "a *pro se* [litigant] is required 'to set forth allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Adams v. Stephenson*, 116 F.3d 464 (1st Cir. 1997) (unpublished table decision) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988).

Moreover, while liberally construing a *pro se* litigant's pleadings, this standard does not permit the court "to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979); *accord Vieira v. De Souza*, 22 F.4th 304, 311 (1st Cir. 2022) (citing *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999) ("A district court should not assume the role of advocate for the *pro se* litigant, and may not rewrite a petition to include claims that were never presented.")). As the First Circuit explains, holding all litigants to proper standards is necessary to ensure every defendant is "afforded both adequate notice of any claims asserted against him and a meaningful opportunity to mount a defense." *Diaz-Rivera v. Rivera-Rodriquez*, 377 F.3d 119, 123 (1st Cir. 2004) (citation omitted).

## IV.    ARGUMENT

Fosu's fifteen counts are pled in a disjointed manner. Some counts plead federal statutory claims seeking to invoke the Court's federal question jurisdiction under 28 U.S.C. § 1331. Some counts plead claims under Rhode Island common law, which can proceed before the Court only through supplemental jurisdiction under 28 U.S.C. § 1367. Some counts – raising a mishmash of fraud-type theories that seem to be causes of action invented by Fosu out of whole cloth – are unclear whether they purport to rest on federal or state law.

As the Court progresses through its review of each of the fifteen counts, it must remain cognizant of its subject matter jurisdiction, particularly as it dismisses Fosu's frivolous federal law

13

`

claims.  There is no diversity jurisdiction because Fosu pleads that he is a citizen of Rhode Island, which is the domicile of some of the Nixon Peabody Defendants.  (Compl. ¶¶ 1-3).  If the Court dismisses all claims that could possibly invoke its federal question jurisdiction, it must determine whether to decline to exercise supplemental jurisdiction over remaining state law claims.  *See W.L. v. Town of Smithfield*, C.A. No. 25-cv-1-MSM-AEM,  2025 WL 1918544, at *6 (D.R.I. July 2025) ("The Court may 'decline to exercise supplemental jurisdiction' over remaining claims if it 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. 1367(c)(3)); *see also Rossi v. Gemma*, 489 F.3d 26, 39 (1st Cir. 2007) ("dismissal of the state law claims [is] perfectly reasonable" following "dismiss[al] of all federal claims.").  To assist in the Court's review of its subject matter jurisdiction, the Nixon Peabody Defendants address the fifteen pled counts starting with the claims that explicitly refer to federal law, then moving to the several repetitious fraud-type claims ostensibly based on state law, and finally turning to the remaining claims clearly raised under state law.

Also, three arguments apply across the Court's Rule 12(b)(6) analysis.  First, Fosu's predominant reliance on his conclusory allegations cannot clear the minimum plausibility threshold.  Second, because many of Fosu's counts purportedly assert fraud theories, he does not come anywhere close to approaching Rule 9(b)'s heightened and particularized pleading requirements required for fraud claims.  Third, in  *Bogosian v. Rhode Island Airport Corp. (T.F. Green Airport)* (hereinafter "*Bogosian*"), a case remarkably like this litigation, the Court dismissed a complaint filed by a *pro se* litigant against an opposing party and that party's legal counsel in a separate case.  C.A. No. 17-16S, 2017 WL 9324764 (D.R.I. May 3, 2017) (Sullivan, M.J.), *report and recommendation adopted and modified*, 2017 WL 295436 (D.R.I. July 11, 2017) (Smith, J.).

4919-8639-3990.1

`

The Court should apply *Bogosian's* analysis to dismiss the analogous claims and allegations that Fosu asserts against Attorney Richard specifically and the remaining Nixon Peabody Defendants.

### A.    The Federal Law Claims (Counts VII, X, XI, XII)

#### 1.    Count VII:  Wire Fraud (18 U.S.C. § 1343)

The federal criminal wire fraud statute, 18 U.S.C. § 1343, does not authorize an individual to bring a private cause of action alleging a violation thereunder.  *Liu v. Amerco*, 677 F.3d 489, 494 (1st Cir. 2012) ("The federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 *et seq*. . . . have no civil remedy provisions."); *Yaghoobi v. Tufts Med. Ctr., Inc.*, 762 F. Supp. 3d 85, 94 (D. Mass. 2025) (same and collecting cases).  Fosu has not pled anything that even remotely suggests that any Nixon Peabody Defendant somehow engaged in any wire fraud, but regardless, he cannot assert such a claim as a private litigant.  Therefore, this count should be dismissed.

#### 2.    Count X:  Civil RICO Violations (18 U.S.C. § 1964(c))

"To state a civil RICO claim, a plaintiff must allege '(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity.'"  *Humana Inc. v. Biogen, Inc.*, 126 F.4th 94, 103 (1st Cir. 2025) (quoting *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 233 (1st Cir. 2003)). The statute defines "enterprise" as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  Fosu pleads "The Enterprise" as follows:  "Defendant Richard and Nixon Peabody, together with other named participants, formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4)." (Compl. ¶ 86).  Fosu does not identify any "other named participants" in the alleged association-in-fact enterprise.  Instead, he seemingly convinced himself that Attorney Richard and the Nixon Peabody Defendants have formed a criminal conspiratorial RICO enterprise with the Court and particularly Chief Judge McConnell to

15

4919-8639-3990.1

`

"silenc[e]" him, to "defeat" the URI Litigation, and to "[p]rotect[] URI from liability for constitutional violations. (*Id*. at ¶ 87). In other words, Fosu believes that Attorney Richard's defense of the URI Defendants, purportedly coupled with Chief Judge McConnell's rulings sometimes (but not always) in the URI Defendants' favor, amounts to a criminal enterprise engaging in patterns of illegal racketeering. The Court's docket in the URI Litigation lays bare the utter absurdity of Fosu's conspiratorial contentions.

Fosu may not "defeat a motion to dismiss simply by asserting an inequity attributable to a defendant's conduct and tacking on the self-serving conclusion that the conduct amounted to racketeering." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991), abrogated on other grounds by *United States v. Velazquez-Fontanez*, 6 F.4th 205, 213 n.2 (1st Cir. 2021). Where, as here, Fosu relies on alleged predicate acts containing fraud, he is again subject to Rule 9(b)'s heightened pleading requirement. *Becher*, 829 F.2d at 288 (stating, in a civil RICO case, that Rule 9(b) applies strictly where fraud lies at the core of the claim). Aside from Fosu's usual attacks against Attorney Richard – all of which are factually dispelled by the Court's docket in the URI Litigation, Fosu has failed to plead any plausible and particularized facts. His blusterous and invented allegations do not suffice to satisfy Rule 9(b). *See Alternative Sys. Concepts, Inc.*, 374 F.3d at 29 (concluding that claims for fraud typically must "specify the who, what, where, and when of the allegedly false or fraudulent representation."); *Prall v. Bush*, No. C.A. 10-16 S, 2010 WL 717780, at *1-6 (D.R.I. Mar. 1, 2010) (complaint dismissed at screening because plaintiff failed to adequately plead RICO conspiracy with sufficient particularity or otherwise plead RICO civil action resulting in injury to plaintiff's business or property).

Further, the "pattern" element "requires a plaintiff to show at least two predicate acts of 'racketeering activity,' which is defined to include violations of specified federal laws" listed in

4919-8639-3990.1

`

the statute. *Humana, Inc.*, 126 F.4th at 103 (quoting *Kenda*, 329 F.3d at 233); *see* 18 U.S.C. § 1961(1) (listing all RICO predicate offenses). Fosu must also show that the "predicates are related, and that they amount to or pose a threat of continued criminal activity." *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 15 (1st Cir. 2000) (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). Finally, Fosu must show that he has suffered some injury to "his business or property," 18 U.S.C. § 1964(c), that was proximately caused by the pattern of predicate racketeering activities. *Efron*, 223 F.3d at 17 (collecting cases).

There is no RICO enterprise nor any pattern of predicate acts pled here. Simply put, Fosu disagrees with the legal and factual positions of the URI Defendants in his lawsuit against them, which Attorney Richard has properly presented in full accordance with the Federal Rules of Civil Procedure, the Court's Local Rules, the Court's administrative orders in the URI Litigation, and his ethical obligations under the Rules of Professional Conduct. Fosu cannot support a RICO claim simply through concocted narratives accusing the Court and counsel of criminal racketeering activity, which derive solely from his disagreement with some of Chief Judge McConnell's rulings and positions asserted by Attorney Richard on behalf of the URI Defendants.

As Magistrate Judge Sullivan ruled in *Bogosian* in rejecting the *pro se* plaintiff's assertion of a RICO claim against opposing counsel:

> The complaint's only factual allegations relate to the litigation tactics used by the Attorneys in defending [a separate lawsuit between Bogosian and their clients], which do not constitute predicate acts. *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051 n. 7 (D.D.C. 2012) (declining to extend civil RICO liability based on an attorney's provision of routine legal services). As one court observed, "we find it extremely difficult to fathom any scenario in which an attorney might expose himself to RICO liability by offering conventional advice to a client or performing ordinary legal tasks (that is, by acting like an attorney)." *Handeen v. Lemaire*, 112 F.3d 1339, 1349 (8th Cir. 1997). Because Mr. Bogosian's "allegations . . . target [the Attorneys'] services as attorneys, nothing more," his pleading fails to state a viable RICO claim. *RSM Prod. Corp.*, 682 F.3d at 1051.

17

4919-8639-3990.1

`

*Bogosian*, 2017 WL 9324764, at *9. The same is true here. Fosu cannot plausibly plead a RICO claim based upon Attorney Richard's representation of the URI Defendants in the URI Litigation while "acting like an attorney."

Fosu just offers a conclusory list of what he contends to be the predicate acts – mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), Obstruction of Justice (18 U.S.C. § 1503), and Witness Tampering (18 U.S.C. § 1512). Yet, Fosu cannot identify a single use of the mail by Attorney Richard in violation of the law. Fosu claims that Attorney Richard's filing of memoranda on the Court's CM/ECF docket system somehow equates to wire fraud, which is another of his many nonsensical beliefs. There has been no obstruction of justice in the URI Litigation. Regardless, any such allegations by Fosu should be addressed before the presiding judge in that litigation, which he has already attempted unsuccessfully multiple times. Fosu does not identify any witness with whom Attorney Richard allegedly tampered because there is none. Therefore, the RICO count should be dismissed.

### 3.    <u>Count XI</u>:  Conspiracy to Violate and Interfere With Civil Rights

Under 42 U.S.C. § 1985(3),  a general civil conspiracy is defined as "two or more persons . . . conspire[ing] . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). To state a claim for civil conspiracy under § 1985(3), a plaintiff must allege (1) the existence of a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws; (3) that the defendants committed an overt act in furtherance of the conspiracy; (4) causing injury to either the plaintiff's person or property or a deprivation of a constitutionally protected right.  *Alston v. Spiegel*, 988 F.3d 564, 577 (1st Cir. 2021); *Parker v. Landry*, 935 F.3d 9, 17-18 (1st Cir. 2019).

18

4919-8639-3990.1

`

To plead the existence of a conspiracy under the statute,

"a plaintiff must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of [his] civil rights" or "plausible factual allegations sufficient to support a reasonable inference that such an agreement was made." [*Alston*, 988 F.3d] at 577-78 . . . . Put simply, "[v]ague and conclusory allegations about persons working together with scant specifics as to the nature of their joint effort or the formulation of their agreement, will not suffice to defeat a motion to dismiss." *Id*. at 578 (citing *Parker v. Landry*, 925 F.3d 9, 18 (1st Cir. 2019)).

*Brown v. Cumberland Cty.*, 557 F. Supp. 3d 169, 188 (D. Me. 2021). "Although a court may infer that an agreement was made when direct evidence was lacking, such an inference must still be based on sufficient and plausible factual allegations." *Id*. Further, an agreement is only grounds for a claim under § 1985(3) if it involves "some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Parker*, 935 F.3d at 18 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

Nothing in Fosu's conclusory and speculative allegations "permit[s] a reasonable inference to that effect." *Alston*, 988 F.3d at 578. Where, as in this case, a plaintiff "plead[s] no facts to support the existence of an agreement" among the defendants to violate the plaintiff's constitutional rights, a plaintiff "fail[s] to cross the plausibility threshold." *Thomas v. Town of Chelmsford*, 267 F. Supp. 3d 279, 307 (D. Mass. 2017); *see also Brown*, 557 F. Supp. 3d at 188-89; *Alston*, 988 F.3d at 578 ("A pleader is entitled to have reasonable inference drawn in his favor, but he is not entitled to the benefit of speculation unanchored to sufficiently supportive facts.").

Fosu also alludes to 42 U.S.C. § 1985(2), which defines a conspiracy of "two or more persons . . . [who] conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully . . . ." 42 U.S.C. § 1985(2). "The first part of § 1985(2) . . . is addressed to conspiracies to interfere with parties, jurors or witnesses in proceedings in federal

19

`

courts." *Hahn v. Sargent*, 523 F.2d 461, 469 (1st Cir. 1975). "[A]s the plain language of the statute and its legislative history indicate, § 1985(2) 'was intended to protect direct violations of a party or witness's right to attend or testify in federal court.'" *Arroyo-Torres v. Ponce Fed. Bank, F.B.S.*, 918 F.2d 276, 279 (1st Cir. 1990) (quoting *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 348 (5th Cir. 1981)).

The four elements of a Section 1985(2) claim are "(1) a conspiracy between two or more persons, (2) to impeded, hinder, obstruct, or defeat in any manner, the due course of justice in any State, (3) with invidiously discriminatory animus, (4) which results in injury to plaintiff." *Bolduc v. Town of Webster*, 629 F. Supp. 2d 132, 150-51 (D. Mass. 2009) (citing *Greco v. Fitzpatrick*, 59 F.3d 164 (1st Cir. 1995)). As with a claim brought under Section 1985(3), Fosu must plead that the conspiratorial conduct is based in some "class-based, invidiously discriminatory animus.'" *Id*. Thus, Fosu "must allege facts that the defendants conspired against [him] because of [his] membership in a class, and that the criteria defining the class were invidious." *Hahn*, 523 F.2d at 469 (citing *Griffin*, 403 U.S. at 91); *accord Aulson v. Blanchard*, 83 F.3d 1, 3-4 (explaining *Griffin* requires a showing of racial or other class-based animus).

Fosu has not alleged any particularized facts to show that the Nixon Peabody Defendants agreed to improperly impede him from prosecuting the URI Litigation (whether when he was represented by counsel or since he has proceeded *pro se*), much less that they did so with any discriminatory animus. In stark contrast to Fosu's conclusory and vague allegations, the Court's docket in the URI Litigation makes abundantly clear that Fosu has had ample opportunity to file numerous motions (often does so uncontrollably). Attorney Richard has simply defended the URI Defendants against Fosu's allegations and claims in a manner consistent with the Federal Rules of Civil Procedure, the Court's Local Rules, and the Rules of Professional Conduct. (URI Litigation,

20

4919-8639-3990.1

`

1/19/24 Order (ECF No. 58) at 1-2) ("[Fosu's] motions not only request no proper court relief, they are scurrilous and inaccurately describe defense counsel's conduct in the litigation, which this Court has seen to be nothing but professional, ethical, and proper.").

Fosu has not asserted any plausible civil rights conspiratorial claim under either Section § 1985(2) or Section 1985(3). Therefore, this count should be dismissed.

### 4. <u>Count XII</u>: Obstruction of Justice

Fosu admits that there is no private civil cause of action under the federal criminal obstruction of justice statute, 18 U.S.C. § 1503, yet he still wrongly pleads it as a claim. (Compl. ¶ 102). *See also Bouvier v. Fusaro*, 799 F. Supp. 3d 34, 38 (D. Mass. 2025) (citing *Scherer v. United States*, 241 F. Supp. 2d 1270, 1282 (D. Kan. 2003), for the proposition that no private cause of action exists under the federal obstruction of justice statute). Fosu has not pled anything in his 58-page pleading that remotely suggests that any Nixon Peabody Defendant engaged in any obstruction of justice, nor can he assert such a civil claim as a matter of law. *Id*. ("To the extent the complaint asserts a claim for obstruction of justice pursuant to 18 U.S.C. § 1503, Plaintiff cannot bring a civil lawsuit based upon the alleged violation of a criminal statute.").

With the dismissal of this fourth federal law claim, the Court must assess whether it can retain subject matter jurisdiction over the remaining claims pled by Fosu, which seem to raise only state law allegations. Under 28 U.S.C. § 1367(c) (3), the Court can decline to exercise supplemental jurisdiction over the remaining state law claims pled by Fosu, none of which plead any plausible basis upon which any relief could be granted in this litigation.

### B. The Scattershot Fraud Claims (Counts I-VI)

Using various labels spread across his first six counts, Fosu contends, in essence, that Attorney Richard engaged in a "fraud on the Court" through his representation of the URI

21

4919-8639-3990.1

`

Defendants, that Attorney Richard otherwise made alleged misrepresentation to the Court in the URI Litigation, and that he somehow conspired with Chief Judge McConnell to perpetrate a fraud against Fosu.   None of these claims make any sense, nor do they articulate clearly whether Fosu purports to proceed under federal or state law which must be known for jurisdictional purposes.

For example, Count IV, labeled as "(FRAUD) CONSPIRACY WITH JUDGE MCCONNELL TO DISMISS CASE," alludes to Fosu's rights under the due process clause of the Fourteenth Amendment to the United States Constitution.  (Compl. ¶ 46).  To the extent that this claim purports to allege a conspiracy to deprive Fosu of due process, it is duplicative of his failed Count VI alleging a civil conspiracy to violate and interfere with civil rights under 42 U.S.C. § 1985, addressed *supra*.  COUNT VI, which is labeled "(FRAUD)" CONSPIRACY TO SUBORN PERJURY," cites 18 U.S.C. § 1622, which Fosu acknowledges is a federal criminal statute with no private cause of action.  (Compl. ¶ 52).  Fosu's count pleading a claim under Section 1622 must be dismissed because he is a private citizen, who "cannot bring a civil lawsuit based upon the alleged violation of a federal criminal statute."  *Bouvier*, 799 F. Supp. 3d at 58.

Cutting through Fosu's disjointed pleading of the first six counts and because there is no allowance for any of the claims under federal law in a civil lawsuit, the Nixon Peabody Defendants analyze Counts I-VI under the rubric of a state law fraud claim.  "Under Rhode Island law, fraud 'is a false representation intending thereby to induce plaintiff to rely thereon, and the plaintiff justifiably relied thereon to his or her damage.'"  *Bogosian*, 2017 WL 9324764, at *8 (quoting *Travers v. Spidell*, 682 A.2d 471, 472-73 (R.I. 1996)) (applying standard elements of a state law fraud claim to similarly vague allegations of "fraud" stemming from statements made to a court during a civil lawsuit).  Fraud claims are also subject to Rule 9(b)'s  heightened pleading requirements.   Like the plaintiff in *Bogosian*, Fosu "does not specify what is the false

4919-8639-3990.1

`

representation on which a fraud claim is based, nor has he alleged that he relied on any such representation." *Id*.  Fosu has pled nothing showing how he relied upon any of Attorney Richard's alleged statements to the Court to his detriment.

Counts I-VI just convey Fosu's subjective dissatisfaction that the URI Defendants, through their legal counsel, have defended themselves in the URI Litigation.  Simply because he does not agree with their positions, Fosu believes that Attorney Richard has thereby committed a "fraud on the Court."  In doing so, Fosu's repeated allegations against the Court and Attorney Richard are not only false and incendiary (as Chief Judge McConnell correctly stated in his Recusal Order), his myriad of fraud claims are not actionable as a matter of law.  All of Attorney Richard's statements in the URI Litigation were properly made to the Court in writing during the briefing of various motions or verbally during the December 15, 2023 status conference.  All of Attorney Richard's work, about which Fosu has loudly and publicly attacked him repeatedly, has proffered the URI Defendants' strong and dispositive defenses in the URI Litigation.

Simply put, Fosu has convinced himself that he alone sets the rules in the URI Litigation, without showing any respect for the Court's authority and the Federal and Local Rules of Civil Procedure.  Fosu thinks that only his views matter and others cannot assert their positions, or else they become subject to his attacks.  To the extent that Fosu has disagreed with any legal argument or factual proffer by Attorney Richard in the URI Litigation, he has had the right and opportunity to respond in accordance with the procedural rules and the Court's case management orders.  To the extent that Fosu has believed that any statement or filing by Attorney Richard was somehow false or equated to a "fraud upon the court," (*see*, *e.g.*, Compl. ¶ 29), the forum for his grievances is through proper filings in the URI Litigation, where the Court has the authority to take necessary action if appropriate in the orderly administration of the case.  *See Aoude v. Mobile Oil Corp.*, 892

4919-8639-3990.1

`

F.2d 1115, 1119 (1st Cir. 1989) (outlining mechanisms at the district court's disposal to address a fraud upon the court). Certainly, Fosu has not been shy in filing documents in the URI Litigation to hurl his attacks on the Court, the URI Defendants, and Attorney Richard. Fosu's simply does not like and refuses to accept the results and rejections of his multiple frivolous filings in the URI Litigation.

Magistrate Judge Sullivan's analysis of identical "fraud on the court" allegations in *Bogosian*, which, as here, were filed by a *pro se* litigant against the opposing counsel in a separate action, is on point to reject Fosu's disjointed fraud theories pled across Counts I-VI:

> Mr. Bogosian's related claim for "fraud on the court" fails because it is not recognized as an independent cause of action, except in rare circumstances. *Shirokov v. Dunlap, Grubb & Weaver PLLC*, No. 10-12043-GAO, 2012 WL 1065578, at * 30 (D. Mass. Mar. 1, 2012) ("Fraud on the court is not a recognized independent cause of action in the First Circuit."); *Beaulieu v. Bank of Am., N.A.*, No. 1:14-cv-00023-GZS, 2014 WL 4843809, at *10 n.5 (D. Me. Sept. 29, 2014) ("fraud on the court is not available as an independent cause of action based on conduct that occurred before a different court"). As the First Circuit has made clear, a claim of fraud on the court may be sustained as an independent action only if the issue raised is "egregious" and involves "an unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter involving an officer of the court." *Roger Edwards LLC v. Fiddes & Sons Ltd.*, 427 F.3d 129, 133 (1st Cir. 2005). Examples of qualifying conduct include bribery of a judge or the exertion of improper influence on the court by counsel. *Greater Omaha Packing Co., Inc. v. Fairbank Reconstruction Corp.*, No. 2:13-CV-436-GZA, 2014 WL 4723083, at *9-10 (D. Me. Sept. Sept. 23, 2014). Such a claim ultimately requires clear and convincing evidence that the fraud occurred. *Roger Edwards*, 427 F.3d at 135. The mere nondisclosure to the adverse party and to the court of facts pertinent to the controversy does not add up to fraud on the court. *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989). Hyperbole aside, nothing in Mr. Bogosian's complaint approaches the level of a "grave miscarriage of justice," which is required for a viable independent action asserting a claim of fraud on the court. *United States v. Beggerly*, 524 U.S. 38, 46-47 (1998).

*Bogosian*, 2017 WL 9324764, at *8. *See also Lu v. Dargie*, 798 F. Supp. 3d 64, 72 (D. Mass. 2025) (surveying law in the First Circuit that does not recognize a cause of action of fraud on the court).

4919-8639-3990.1

`

Casting aside Fosu's hyperbole, Counts I-VI do not allege a "grave miscarriage of justice" sufficient to render Fosu's subjective (and factually baseless) grievances actionable as claims of "fraud on the court." *Bogosian*, 2017 WL 9324764, at *8.  Rather, the URI Defendants have defended themselves against Fosu's false, scurrilous, and scandalous accusations.

There has been no fraud by Attorney Richard in the URI Litigation, nor any grand conspiracy by the Court against Fosu.  Fosu's Complaint does not identify a single alleged statement by Attorney Richard that Fosu has relied upon to his detriment.  Fosu's various fraud claims, while full of his usual bluster and self-promotional hyperbole, are devoid of any plausible, well-pled factual allegations and fall far short of the heightened Rule 9(b) standard.  No matter how many times Fosu tries, and no matter how many different labels that Fosu concocts, none of his allegations in Counts I-VI are actionable.  Fosu's various fraud theories fail to plead any plausible claim upon which relief can be granted, and all six counts should be dismissed.

## C.      Other State Law Claims (Counts VIII-IX, XIII-XV)

### 1.      Counts VIII and IX: Malicious Prosecution and Abuse of Process

Fosu misconstrues and confuses the tort of malicious prosecution and a distinct claim alleging abuse of process.  Starting with a malicious prosecution claim, Rhode Island law requires a showing of a party's filing of "a suit for damages resulting from a prior criminal or civil legal proceeding that was instituted maliciously and without probable cause, and that terminated unsuccessfully for the plaintiff therein." *Kingstown Mobile Home Park v. Strashnick*, 774 A.2d 847, 858 (R.I. 2001) (quoting *Clyne v. Doyle*, 740 A.2d 781, 782 (R.I. 1999) (per curiam)).  "To establish malice, it must be shown that "the person initiating the original action was primarily motivated by ill will or hostility or regardless of such motivation did not believe that he or she

25

`

would succeed in that action, and that the prior suit resulted in a special injury to the defendant therein." *Id*. (internal citations, alterations, and quotation marks omitted).

"Abuse of process, as distinguished from malicious process, as distinguished from malicious prosecution, 'arises when a legal proceeding, although set in motion in proper form, becomes perverted to accomplish an ulterior or a wrongful purpose for which it was not designed.'" *Butera v. Boucher*, 798 A.2d 340, 353 (R.I. 2002) (quoting *Clyne*, 740 A.2d at 783). "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion * * *." *Id*. (quoting W. Page Keeton, *Prosner & Keeton on the Law of Torts*, § 121 at 898 (5th ed. 1984)).

Fosu's malicious prosecution and abuse of process claims fail for a very simple reason. The Nixon Peabody Defendants have never instituted any criminal or civil proceedings against Fosu. Instead, in both counts, all of Fosu's allegations relate solely to his disagreement with how Attorney Richard has properly defended his clients in the URI Litigation, which remains pending before the Court and has not reached a final disposition. Accordingly, the counts alleging malicious prosecution and abuse of process fail as a matter of law and should be dismissed.

### 2.    **Count XIII**:  Defamation

Under Rhode Island law, "[a] plaintiff in a defamation action carries a substantial burden." *Burke v. Gregg*, 55 A.3d 212, 219-20 (R.I. 2012) (quoting *Alves v. Hometown Newspapers, Inc.*, 857 A.2d 743, 750 (R.I. 2004)). To state a defamation claim, a plaintiff must plausibly allege "(1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence; and (4) damages, unless the statement is actionable irrespective of special harm." *Nassa v. Hook-SuperRx, Inc.*, 790 A.2d 368,

26

4919-8639-3990.1

`

373 n.10 (R.I. 2002). Under Rhode Island law, a statement is considered defamatory when it is "false and malicious, imputing conduct which injuriously affects a man[']s reputation, or which tends to degrade him in society or bring him into public hatred and contempt . . . ." *Reid v. Providence Journal Co.*, 37 A. 637, 638 (R.I. 1897). A claim must include factual allegations that "the person . . . to whom the communication was published reasonably understood" the communication to be defamatory. *Marcil v. Kells*, 936 A.2d 208, 213 (R.I. 2007).

In support of his defamatory claim, Fosu alleges that Attorney Richard, in written court filings or verbally during the December 15, 2023 status conference in the URI Litigation, (1) described Fosu's litigation actions as "vexatious", (2) stated that Fosu violated the Family Educational Rights and Privacy Act ("FERPA"), (3) described Fosu's conduct in the URI Litigation as "unprofessional," and (4) called Fosu's claims "baseless." (Compl. ¶ 111). The alleged statements are not actionable because they are absolutely privileged. They relate entirely to Attorney Richard's representation of his clients in the in the URI Litigation. "[L]ibelous matters in pleadings are absolutely privileged when statements of the issues of the case, even if the allegations are false and malicious." *Pawtucket Credit Union v. LaScola*, 693 A.2d 1031, 1032 (R.I. 1997) (citing *Vierra v. Meredith*, 84 R.I. 299, 301 (R.I. 1956)). This absolute privilege applies throughout judicial proceedings. *Imbler v. Pachtman*, 426 U.S. 409, 426 n.23 (1976) (absolute privilege extends to briefs and pleadings).

In rejecting a *pro se* plaintiff's similarly pled defamation claim against the opposing party's counsel in *Bogosian*, Magistrate Judge Sullivan applied the analysis of the United States Supreme Court in *Imbler* and the Rhode Island Supreme Court in *Pawtucket Credit Union*:

> This Count fails in the face of the well-established principle that "libelous matters in pleading are absolutely privileged when the statements are relevant to the issues of the case, even if the allegations are false and malicious." [*Pawtucket Credit Union*, 693 A.2d at 1032] (supposedly defamatory allegations in complaint

27

`

privileged because relevant to issues in the case). This absolute privilege broadly applies to third-party subpoenas and to a matter that arises during judicial proceedings generally. [*Imbler*, 424 U.S. at 426 n. 23] (absolute privilege covers any courtroom statement and extends to briefs and pleadings); *Steadfast Ins. Co. v. Smx* 98, Inc., No. H-06-2736, 2009 WL 890398, at *22 n.8 (S.D. Tex. Mar. 30, 2009) (absolute privilege bars claim of business disparagement based on filing of complaint and issuing subpoenas to third parties in discovery); *U.S. ex. rel. Vasudeva v. Dutta-Gupta*, No. 11-114-ML, 2014 WL 6811506, at *10-11 (D.R.I. Nov. 7, 2014) (absolute privilege bars defamation claim based on statements made during judicial proceedings). Because all of the matter that Mr. Bogosian has labeled as libelous consists of subpoenas and deposition questions directed to his former employers [], "slanderous discovery and litigation tactics," and the "slanderous language used against Plaintiff in front of a courtroom," the defamation count fails to state a claim.

*Bogosian*, 2017 WL 9324764, at *6.

Even if the statements at issue were not privileged (which they are), the claim still fails because the alleged statements were not "defamatory" as a matter of law. Whether a particular statement is defamatory or not is a question of law for the court to decide, not an issue of fact for a jury. *Marcil*, 936 A.2d at 213. The Court must consider the allegedly defamatory words "in the context of the publication in which they appear," rather than read them in isolation. "The suspect verbiage is to be construed in its 'plain and ordinary sense' and 'presumed to have [been used] in [its] ordinary import in the community in which [it is] uttered or published.'" *Id*. (quoting *Reid*, 37 A. at 637).

None of the alleged statements (calling Fosu's conduct "vexatious" or "unprofessional," describing his claims as meritless, or making an argument about the legal scope of FERPA) come anywhere close to being defamatory. *Burke*, 55 A.3d at 220 (providing examples of statements, such as calling a person "paranoid," "schizophrenic," or "silver-tongued devil," that were not defamatory as a matter of law). Fosu's failure to allege any "defamatory" statements compels the dismissal of his defamation claim. *Alves*, 857 A.2d at 750-51.

4919-8639-3990.1

`

As a matter of law, Fosu's defamation claim plead no plausible basis for relief.  Attorney Richard's alleged statements in the URI Litigation were not "defamatory," and they are absolutely privileged because they were made in the context of his proper representation of the URI Defendants in Fosu's lawsuit against them.  Therefore, this count should be dismissed.

### 3.    Count XIV:  Rules of Professional Conduct

The Rhode Island Rules of Professional Conduct, as adopted by the Rhode Island Supreme Court and applied by this Court under its Local Rule of General Application 208, expressly state that there is no private cause of action for any alleged violation of the Rules by a practicing attorney:

> [20] Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. . . [the Rules] are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.  The fact that a Rule is a just basis . . . for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement  of the Rule.

R.I. Rules of Prof. Conduct, Art V (Scope), ¶ 20; *see also Johnson v. Kosseff*, C.A. No. WC 2011-0366, 2013 R.I. Super. Lexis 11, at *28-35 (R.I. Super. Ct. Jan. 11, 2013) (alleged violations of the Rules of Professional Conduct cannot serve as a basis for a cause of action).  Therefore, this count should be dismissed.

### 4.    Count XV:  Intentional Infliction of Emotional Distress

"To create liability for intentional infliction of emotion distress in Rhode Island, '(1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress," and (4) the emotional distress must be severe.'"  *Doe v. Brown Univ.*, 43 F.4th 195, 209 (1st Cir. 2022) (quoting *Gross v. Pare*, 185 A.3d

4919-8639-3990.1

`

1242, 1246 (R.I. 2018).  For emotional distress to be severe, the plaintiff must "show some 'physical symptomatology resulting from the alleged improper conduct.'"  *Id*. (quoting *Vallinoto v. DiSandro*, 688 A.3d 830, 838 (R.I. 1997)).

Rhode Island law adopts Section 46 of the Restatement (Second) of Torts to establish what constitutes the necessary showing of extreme and outrageous conduct:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Swerdlick v. Koch*, 721 A.2d 849, 863 (R.I. 1998) (quoting Restatement (Second) Torts § 46 cmt. d).  Thus, "a defendant may not be held liable when he has done no more than insist on his legal rights in a permissible way, even though such insistence is likely or even certain to annoy, disturb, or inconvenience [plaintiff] or even cause [plaintiff] to suffer some emotional distress."  *Id*. (citations and quotations omitted).

Fosu's allegations fall far short of reaching the exceedingly high bar to clear the plausibility threshold and show an intentional infliction of emotional distress claim.  *See Bogosian*, 2017 WL 9324764, at \*7 (rejecting the *pro se* plaintiff's intentional infliction of emotional distress claim against counsel for the opposing party).  Fosu's allegations relate to Attorney Richard's permissible and proper representation consistent with his clients' legal rights in the URI Litigation.

For these multiple reasons, Fosu has failed to plead a plausible claim for intentional infliction of emotional distress, and this count should be dismissed.

### D.    No Leave to Amend Should be Allowed

"[A] district court may deny leave to amend when the request is characterized by undue delay, bad faith, futility, [or] the absence of due diligence on the [pleader's] part."  *Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Ints. in Int'l & Foreign Cts.*, 87 F.4th 62, 80 (1st Cir. 2023) (internal citation omitted); accord *Foman v. Davis*, 371 U.S. 178 (1962).  "So

30

`

too, the court may deny the request if the proposed amendment 'would serve no useful purpose.'"

*Calderon-Serra v. Wilmington Trust Co.*, 715 F.3d 14, 20 (1st Cir. 2013) (quoting *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006)).

Again, *Bogosian* is directly on point here, for the following reasons stated by Judge Smith in that case:

> When amending the complaint would be futile, however, because the pleading is "patently meritless and beyond all hope of redemption," then there is no need to provide the litigant with an opportunity to amend, [*Brown v. Rhode Island*, F. App'x 4, 5 (1st Cir 2013) (unpublished per curiam opinion)] (quoting *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001)). After reviewing the history and dispositions of the prior litigation as well as the pleadings, memoranda, and letters filed in the instant litigation, as well as the pleadings, memoranda, and letters field in the instant litigation, the Court concludes that providing Plaintiff with an opportunity to amend his complaint would be futile. The bottom line is that this Complaint is completely lacking in merit; is filled with inventive (sic) and hyperbole, not actionable facts; and has taxed the resources of Defendants and this Court beyond reason. Enough is enough.

*Bogosian*, 2017 WL 2954536, at *2.

For the many reasons addressed above addressing each of the fatally flawed fifteen counts, Fosu's complaint is patently meritless and beyond all hope of redemption. While Fosu vows to fight this lawsuit until "his last breath," (Compl. ¶ 134), his self-aggrandizing and defiant pronouncement cannot save his legally deficient pleading, which runs completely out of breath at the outset of this case. "Enough is enough" with this litigant.

## V.    CONCLUSION

None of Fosu's counts plead any plausible claim upon which relief can be granted. The federal law counts fail as a matter of law. If the Court retains supplemental jurisdiction over the state law counts, they likewise fail as a matter of law.

Based upon the Court's analysis of its subject matter jurisdiction, the Court should enter a Final Judgment in the Nixon Peabody Defendants' favor on all claims dismissed on substantive

4919-8639-3990.1

`

grounds.  No leave to amend should be granted because Fosu's Complaint is fatally flawed and any amendment would be futile.

DEFENDANTS,

STEVEN RICHARD, NIXON PEABODY LLP, ANDREW I. GLINCHER, STEPHEN D. ZUBIAGO, WILLIAM CONNOLLY, STACIE COLLIER, TABITHA ROSS

By Their Attorney,

/s/ Jeffrey S. Brenner
Jeffrey S. Brenner (#4369)
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, RI  02903
Tel:    (401) 454-1042
Fax:    (866) 947-0883
Dated:  January 12, 2026          Email: jbrenner@nixonpeabody.com

## CERTIFICATE OF SERVICE

I certify that, on this 12th day of January, 2026, I filed and served this memorandum via the Court's CM/ECF system.  I have also served a copy of this memorandum upon Pro Se Plaintiff Louis Kwame Fosu via email at Loufosu@diversitythinktank.org and regular mail to his listed address at 43 Connecticut Street, Cranston, RI 02920.

/s/ Jeffrey S. Brenner

4919-8639-3990.1